## BELDING *v.* JOHNSON *et al.*

The suit being by a widow against a barkeeper for damages for the homicide of her husband who was killed in the defendant's bar-room, and it being alleged that he sold liquor to the deceased and his slayer in the forenoon, and that the quarrel between these two then originated in regard to a wager they had made, but the homicide not having occurred until the afternoon, when the deceased again entered the bar-room, not as a customer or guest, but to obtain the watch he had wagered to the slayer, the defendant cannot be held liable because he furnished liquor to the slayer when drunk and failed to protect the deceased against him.

November 12, 1890.

Torts. Negligence. Damages. Before Judge VAN EPPS. City court of Atlanta. June term, 1890.

Mrs. Belding, as the wife of Neal Belding, sued Johnson and Whitlock for $20,000 damages, making the following allegations : About nine o'clock in the morning of April 26, 1889, her husband and Whitlock met in the bar-room of Johnson and drank intoxicating liquors together, and soon became engaged in a dispute which ended at that meeting in the bet of a watch, which her husband agreed, at the suggestion of Whitlock, should be held by one Sloan, a clerk in the bar-room. Her husband and Whitlock then left the saloon but afterwards returned, and her husband said he would withdraw the bet, and demanded his watch, but to this Whitlock objected, and Sloan refused to surrender it without

v 86-12

Whitlock's consent. Her husband and Whitlock had angry words about the matter, Whitlock by that time being under the influence of liquor purchased at Johnson's saloon. Whitlock agreed to let her husband have his watch if he would pay Whitlock's expenses of that day at the saloon, which proposition her husband declined. This was about eleven o'clock in the forenoon. In the afternoon he went to the saloon and demanded his watch again. Whitlock was then considerably under the influence of liquors purchased at Johnson's saloon, and that too while Whitlock was drunk and so known to be by Johnson. When her husband demanded his watch in the afternoon, Whitlock refused to allow him to have it, and they then quarrelled in the saloon in the presence of Johnson and his clerks, threatening to fight, and Belding made preparations to fight by pulling off his coat and hat, whereupon Whitlock, without cause, shot and killed him. Johnson was the owner and proprietor of the saloon, and invited her husband and all other persons there to drink; promising him and all others that he would maintain order and protect all persons from violence by any person in his bar-room, but he not only failed to do this but sold liquor to Whitlock when he was drunk, knowing that Whitlock when under the influence of liquor was a violent and dangerous man, and that Whitlock and her husband were angry with each other, and that Whitlock had threatened to whip her husband. Johnson and his servants continued to furnish liquors to Whitlock when they knew he was drunk, and instead of protecting her husband against Whitlock's violence, stood by and saw him shoot her husband down without cause, and without attempting to protect him and without uttering one word of remonstrance. The difficulty could have been averted and the life of her husband saved if Johnson had refrained from selling Whitlock

liquor, and discharged his duty in keeping order and protecting her husband from Whitlock's violence. At the time her husband was killed he was healthy and strong, thirty years old, able to earn by his labor $100 per month, etc., and she has been deprived of his earnings and protection by the wrongful and illegal conduct of defendants.

On general demurrer the action was dismissed as to Johnson, and the plaintiff excepted.

T. P. WESTMORELAND and L. B. AUSTIN, Jr., by brief, for plaintiff.

ARNOLD & ARNOLD, for defendant.

SIMMONS, Justice.

Under the facts alleged in the declaration, which will be found set out in the official report, there was no error in sustaining the demurrer and dismissing the case. Under these facts, we do not think Johnson was liable to the widow of Belding on account of her husband's having been killed by Whitlock in Johnson's bar-room. The declaration alleges that Johnson sold liquor to these parties in the forenoon, and that the quarrel between the latter then originated, in regard to a wager they had made; yet the homicide did not occur until the afternoon, when Belding again entered the bar-room for the purpose of obtaining the watch he had wagered with Whitlock in the forenoon ; he did not enter as a customer or guest, but upon his own private business. He then met Whitlock the last time, the quarrel was renewed and he was killed.

Our statute allows a recovery by certain named persons for a homicide when "the death of a human being results from a crime or from criminal or other negligence." Acts 1887, p. 45. It is sought to make Johnson liable in this action because he furnished liquor to Whitlock when drunk and failed to protect Belding against Whitlock, both being in his saloon at the time

of the homicide, and Johnson himself being present.
Under the facts as alleged, we do not think this was
such negligence or misconduct on the part of Johnson as
would authorize the widow to recover against him, espe-
cially as Belding was not even a guest or customer of
Johnson at the time. Our code, §§3072–3, declares:
"If the damages are only the imaginary or possible re-
sult of the tortious act, or other and contingent circum-
stances preponderate largely in causing the injurious
effect, such damages are too remote to be the basis of
recovery against the wrong-doer. Damages which are
the legal and natural result of the act done, though
contingent to some extent, are not too remote to be re-
covered. But damages traceable to the act but not its
legal or material consequence, are too remote and con-
tingent." Under these sections of the code, we think
the damages too remote to be recovered. "Other and
contingent circumstances" preponderated largely in
causing the homicide; and the damages, though trace-
able remotely to the act of selling the liquor, are not
the "legal and material consequence" of the act. They
do not arise directly from that act, but from the act of
shooting, and indirectly from the bet made between
Belding and Whitlock, Whitlock's refusal to give up
the watch, and Belding's return in the afternoon to re-
cover it and his preparation for a fight with Whitlock.
These indirect elements are more proximate than is that
of furnishing the liquor. There are many cases in the
reports where recoveries have been had against bar-
keepers for injuries arising from the sale of liquor to
persons, but all of them, so far as we have ascertained,
except the case of Rommel v. Schambacher, 120 Pa. St.
Rep. 579, are founded wholly upon special statutes au-
thorizing recovery for such injuries. In no other
State has the right to recover been placed upon common
law principles; and several of the courts, in discussing

the question, say that no recovery could be had at common law. As we have no special statute in this State authorizing such recovery, and as the two sections above cited from our code are declaratory of the common law of this State, and as we think that under these sections the damages claimed are too remote, we affirm the judgment of the court below sustaining the demurrer and dismissing the case. Even Rommel *v.* Schambacher, *supra,* would not be a precedent for recovery in a case of homicide, for at common law, homicide gave no cause of action. Besides, Pennsylvania had a statute upon which the decision in that case could have been predicated. *Judgment affirmed.*