3572. BOWERS, administratrix, *v.* SOUTHERN RAILWAY COMPANY.

1. Under the act of Congress prescribing the liability of carriers by railroad for injuries to their employees, the servant may assume the risk as in other employments, except as to such things as are violative of statutes enacted for the securing of the servant's safety.

2. Where a passenger-train running at somewhat more than the schedule rate of speed was wrecked by reason of the fact that a trespasser turned the switch between the main line and a siding, whereby the train was caused to leave the main line and run into a siding, and was there derailed at a safety switch situated in the side-track at a point about one hundred feet from the main line, and injury to the fireman was caused by the wreck, neither the alleged excessive speed at which the train was running nor the situation of the safety switch is to be regarded as the proximate cause of the plaintiff's injury, especially where it appears from the allegations of the petition and the proof on the trial that the same result probably would have ensued if the train had been running at a normal rate of speed. The proximate cause of the injury is the act of the trespasser.

3. In a suit for damages, if it appears that there intervened between the alleged negligence of the defendant and the damage sustained by the plaintiff the independent criminal act of a third person which was the direct and proximate cause of the damage, the plaintiff can not recover.

4. As to one to whom the railroad company does not owe a higher degree of care than the standard of ordinary care and diligence imposes, and owes no affirmative duty of protection such as it owes passengers, the negligence of the railroad company in leaving a switch unlocked is not to be regarded as the proximate cause of an injury which ensues because a wilful and conscious trespasser, by a criminal act, turns the switch whereby the train is wrecked and a person is injured. The intervening, independent act of the trespasser renders remote the negligence of the railroad company in leaving the switch unlocked.

5. Since the defendant's liability in the present case depends solely upon the question as to whether the switch, through the turning of which the train was wrecked, was turned by the criminal act of a trespasser, alleged error in rulings as to evidence relating to other and independent matters will not be considered, since, even if error were found, it should be treated as harmless.

6. Where evidence is objected to and the court, in response to the objection, states that he does not admit it generally, but admits it for a

special purpose, and counsel for the objecting party, upon ascertaining the purpose for which it is to be admitted, makes no further objection to it, no valid assignment of error can be based on the court's act in admitting it.

7. A witness in this State is not rendered incompetent by conviction of a felony, or other crime, irrespective of whether the conviction be had in this State or in another State, and irrespective of whether the conviction in the State in which it was had carries with it incompetency to testify or not. The competency of witnesses is regulated by the law of the forum.

DECIDED JANUARY 15, 1912.

Action for damages; from city court of Atlanta—Judge Reid. May 10, 1911.

The plaintiff's husband (on whose estate she was administratrix) was killed on an interstate train. He was a fireman of the defendant, engaged in interstate commerce. The plaintiff originally brought suit in two counts under the South Carolina statute, and two counts under the Federal statute; but the court excluded the two counts under the South Carolina statute, upon the ground that the Federal statute applied. The death of the intestate while working as a fireman on an interstate train, administration, earning capacity, number of children, contribution, and other formal parts of the case were proved. It was shown that, at what is known as Gross's siding, where the decedent met his death, there is a switch and side-track running to a factory about a mile and a half away. The track approaches this point on a steep down grade, through a deep cut, and on a curve. The train on which the decedent was engaged at the time of his death approached this point running at the rate of about thirty-five miles per hour (which was slightly above its ordinary speed under the schedule, but not greater than the speed allowed by the rules of the company), and at the switch left the main line, dashed into the side-track, and, at what is known as the safety or derailing switch (i. e., a device placed in a side-track whereby if cars left on the side-track are put in motion they will not run out upon the main line, but will be thrown from the track before the main line is reached), the engine was derailed and turned over, producing the fatality for which the suit is brought. The plaintiff made the following specifications of negligence: (1) Defendant was negligent in that its track was so constructed that the approach to the switch was around a curve and through a deep cut, preventing the engineer and fireman from seeing the lights on the switch-stand and detecting its

condition in time to slow up and avoid running into the same. (2) Defendant was negligent in that it had in the siding, right close to the main-line switch, what is called a safety switch. The effect of a safety switch at this place is that when the switch is thrown, unless the safety is also thrown, the train entering the switch will, instead of going down the side-track, run off, as was done in the present case. (3) Defendant was negligent in that the switch was left unlocked by its employees, leaving it where any passer-by could throw it to the side-track. (4) Defendant was negligent in that its employees working upon its road threw said switch to the side-track instead of to the main line. (5) Defendant was negligent in that the engineer was running at an excessive rate of speed. (6) Ordinary care required the defendant to have and maintain a switch target and switch lights, constructed as follows: A post placed around the curve from the switch, so that the same could be seen at a long distance from the switch; the signals on this post to be connected by wires, so that, when the switch was thrown, the wires would throw the lights by night and the boards by day, indicating to an approaching train whether the switch was thrown to the side-track or to the main line, and giving such indication in time for the train to stop. Defendant failed to have any such target or signals. Such failure on the part of the defendant was negligence. (7) Defendant was negligent in that the rails of the side-track, where the wreck occurred, were small and light, and not sufficiently strong to hold the engine which was wrecked, the same being a very large engine, and the cross-ties were rotten and defective. (8) Defendant was negligent in that the light on the switch-target was not lighted.

The defendant pleaded that as to the acts of negligence alleged, the plaintiff's intestate had assumed the risk; and in this connection the defendant showed that he had been running for above two years over this track at this place in the condition in which it was at the time of the injury (except, of course, in so far as the switch was on this occasion turned to the side-track). The defendant further pleaded that the proximate cause of the injury was an act for which it was in no wise responsible, namely, the act of a trespasser in breaking the lock on the switch and turning it so as to throw the train to the side-track. On this phase of the case the defendant showed, by the evidence of one Clarence Agnew, that the

witness himself had thrown the switch from the main line to the siding. shortly before the wreck occurred; that he pulled the chain and the lock came open; that he broke the lock up and threw it away; that he afterwards found the broken pieces of the lock and the piece of iron with which he broke it; that he confessed to his crime; that he was tried for the murder of the engineer, was convicted, and is now in the penitentiary. The defendant then proved by a woman that she saw Agnew at the switch shortly before the wreck, knocking at it. The sheriff of Spartanburg county, South Carolina, testified that Agnew confessed that he broke the lock on the switch, and went with him and found the broken pieces of the lock, and the implements with which he said he broke it. The broken lock, showing indentation marks, and the bar with which the lock was broken, were introduced. The defendant showed by the crew of the train which last used the siding that the switch was properly set to the main line and was locked after it was used, and by the crew of the last train which passed the siding shortly before 6:30 in the afternoon that the switch was set right to the main line.

The trial judge, in his charge to the jury, limited the plaintiff's right of recovery to two grounds: (1) negligence on the part of the defendant's employees in leaving the switch unlocked where any passer-by could throw it to the side-track; and (2) negligence on the part of the defendant's employees in themselves throwing the switch to the side-track, instead of to the main line. The important question in the case is whether the court erred in thus limiting the plaintiff's case.

*Burton Smith,* for plaintiff.

*McDaniel & Black,* for defendant.

POWELL, J. (After stating the foregoing facts.)

The case, as has been said already, arises under the act of Congress fixing the liability of interstate railroads for injuries to their employees, and is determinable by its provisions. Under that act the doctrine of respondeat superior applies in favor of an injured servant, and what is known as the "fellow-servant doctrine" is practically abolished. Contributory negligence on the part of the injured servant diminishes, but does not defeat, a recovery. The defense of assumption of risk was not abolished, however, except in cases where the servant was injured through the violation by the master of some "statute enacted for the safety of employees." The

questions of negligence and of proximate cause are still to be determined according to the generally existing rules on that subject. Taking up now the allegations of negligence which the court eliminated from the consideration of the jury, for the purpose of seeing whether the court properly eliminated them: The first is that the defendant was negligent in that it had so constructed its track that the approach to the switch was around a curve and through a deep cut, which prevented the engineer and fireman from seeing the lights on the switch-stand, in order to detect that the switch was turned and to slow up and keep from running into the side-track. The decedent had been running over this same track for more than two years. It seems plain to us that as to this he had assumed the risk.

The second allegation of negligence is that the derailing switch, or safety switch as it is called, on the side-track, was located so close to the main line that when the train left the main-line track it was thrown off, whereas otherwise it would have continued down the side-track. If it can not be said that this was also an assumed risk, still we think that under all the facts disclosed there was no negligence on the carrier's part. The location of this derailing switch was a condition, and not a cause, of the injury. It was certainly proper for the company to have this derailing switch in the side-track, in order to protect its main line from cars left on the side-track. It was not located so close to the main line as to interfere in any wise with the operation of trains thereon, unless some act of wrong on the railroad company's part or on an outsider's part had changed the switch. But for some such thing, the train on which the plaintiff's husband was working would never have entered this side-track at all, so as to be in range of this derailing switch, and, therefore, when we come to consider its part in bringing about the death of the decedent, we are first confronted with the question as to what was the cause of the decedent's being in range of this switch at the time he was killed; and, on looking to the cause, we find that it was the wrongful act of some one in turning that switch. As we attempted to point out in *Atlantic Coast Line Railroad Co.* v. *Daniel,* 8 *Ga. App.* 775 (70 S. E. 203), the law regards as the proximate cause that thing or combination of things in which, or through which, the normal course of prudently conducted affairs is violated. In a remote sense, the location of

this derailing switch (if its location could have been in any sense regarded as wrongful) may be regarded as a cause of the injury, but the proximate cause was the wrongful turning of the switch between the main line and the side-track. The court submitted to the jury the question as to whether the defendant was guilty of any wrong or neglect as to this switch between the main line and the side-track being turned; and the jury, having found that it was guilty of no wrong or negligence in this respect, could not have found that it was guilty of actionable wrong merely because this derailing switch was situated at the particular point at which it was, rather than at some other point in the side-track. There may be concurrent proximate causes, of course, but the distinction must always be kept in mind between concurrent causes and mere conditions upon which the proximate cause operates.

The speed at which the train was running was likewise either a condition or a remote cause. There was nothing inherently wrongful in this rate of speed; it was ineffectual to produce any injury. The real cause of the train's speed becoming dangerous was the turning of the switch (as the jury has found) by the trespasser. According to every rule of human experience, the wreck would have resulted just as it did if the train had been running at the schedule speed of thirty miles an hour instead of thirty-five or forty, as it was running. It is impossible to see how it can be seriously contended that the injury was brought about in any wise through any excess of speed over the normal, even if we regard the absolute schedule of the train as the normal, and regard thirty-five or forty miles an hour as an abnormal rate. We are not to be understood as holding that any excessive rate of speed was shown in this case, but are merely attempting to show that if an excessive rate of speed was shown, the wreck and the injury did not result from that cause.

As to the allegation of negligence to the effect that the defendant did not equip its switches at this point with what is known as distance signals (a description of the operation of which is set forth in the excerpt quoted above from the plaintiff's petition): it was shown that nowhere on the defendant's lines were any such switches, and that the plaintiff's husband had been working on that road as a fireman and going over the very track in question for more than

two years. The court properly held that even if this were a negligent deficiency, the decedent had assumed the risk.

The allegation of negligence as to the condition of the rails and ties on the side-track was probably so far rebutted by the' proof as not to make it a jury question; but irrespective of that, these things stand on the same footing juridically as does the situation of the derailing switch which has already been discussed in detail. We conclude, in charging the jury, that the court did not err in submitting only the two questions: (1) as to whether some employee of the company left this switch open, or whether it was opened by a trespasser; and (2) whether the company's employees were negligent in leaving it unlocked so that a trespasser might open it. As to the submitting of the second question to the jury (that is, as to the company's negligence in leaving the switch unlocked) it may be remarked that the court probably gave the plaintiff a benefit to which he was not entitled. As to persons to whom the railroad company owes the duty of extraordinary care and diligence, or the duty of affirmative protection (such as passengers), it may be and probably is true that a railroad company could be held liable for leaving a switch unlocked, whereby a trespasser was enabled to throw a switch and wreck a train; but as to other persons, we doubt if in such a case liability can be upheld. "The defendant's negligence may put temptation in the way of another person to commit a wrongful act, by which the plaintiff is injured; and yet the defendant's negligence may be in no sense a cause of the injury." 1 Sherman & Redfield on Negligence (5th ed.), § 25, quoted approvingly in *Andrews* v. *Kinsel,* 114 *Ga.* 390 (40 S. E. 300, 88 Am. St. R. 25). The general doctrine is laid down, in the course of the opinion in that case (*Andrews* v. *Kinsel,* supra), that where there has intervened between the alleged negligence of the defendant and the damages sustained by the plaintiff an independent illegal act of a third person, producing the injury, and without which it would not have happened, and which is the direct proximate cause of the damage, no liability exists. We have adverted to this doctrine more especially as the basis for saying that in this case the one fact upon which the whole question of liability turns is whether this train was wrecked through the criminal act of a wilful, conscious trespasser who turned the switch, or from some other cause. This question

was squarely submitted to the jury, without any error in the charge as to it; and the only exception as to testimony bearing on this point of the case is, as we shall presently show, not well taken. If this point was correctly presented to the jury and decided by them, the judgment refusing a new trial should not be reversed, irrespective of whether the numerous exceptions to rulings on evidence relating to other phases of the case are well taken or not; for if error as to any of these matters be established, it would at once fall into the category of harmless error.

Two rulings on evidence, relating to the issue of fact as to whether the alleged trespasser, Clarence Agnew, threw this switch or not, are complained of. The first is that the court, on the direct examination of John M. Nichols, the sheriff of the county where the wreck occurred, was allowed to answer that when he arrested the defendant, he carried him up to the scene of the wreck and "went up to the switch where he claimed to have broken the lock loose." Upon objection generally to this testimony, the court made the following statement: "I think anything he stated which caused the sheriff to make the search is admissible. I will leave it in for the present—anything that was said to him about finding those things. I understand you are objecting to all of it. This evidence don't go in as evidence of the truth of the statement he made that he did this thing. It goes in connection with the conduct of these people in finding those things." Thereupon, Mr. Smith, of counsel for the plaintiff, replied, "Your honor does not admit it to show he broke the lock on the switch?" The court answered, "No;" whereupon no further objection to the testimony was interposed. This, of course, presents no ground for assignment of error in this court, even if the ruling of the court were incorrect; but the court's ruling was not incorrect.

The other assignment of error is that the court erred in admitting the testimony of Clarence Agnew, it appearing to the court that Agnew was at the time a convict for life, and that under the laws of South Carolina, where he was convicted, he was incompetent to testify as a witness. Able counsel for the plaintiff in error frankly concedes in his brief that personally he does not regard this exception as being well taken, but adds: "But, as counsel frequently make mistakes, if we are mistaken, we wish the benefit of

it." The opinion of counsel as to this matter is eminently correct; his objection was not well taken. Under the law of this State a person convicted of a felony is a competent witness; the fact of his conviction only goes to his credit. Civil Code (1910), § 5858. Of course, the competency is determined by the law of the forum.

*Judgment affirmed.*