143 So. 893

## SMITH v. ALABAMA WATER SERVICE CO.

### 7 Div. 141.

Supreme Court of Alabama.

Oct. 13, 1932.

Rehearing Denied Nov. 3, 1932.

Rutherford Lapsley and Young & Longshore, all of Anniston, for appellant.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

**KNIGHT, J.**

Suit for personal injuries alleged to have been suffered by appellant, as the result of falling into an open meter box, placed by appellee between the curb and the sidewalk at No. 2124 Monroe avenue, in the city of Anniston.

The appeal presents for review the propriety of the court's ruling in sustaining defendant's (appellee's) demurrer to counts 7, 8, 9, 10, 11, and 12 of the amended complaint. Upon the sustaining of the demurrer to these counts, the plaintiff took a nonsuit, and prosecutes this appeal.

It appears, from the pleading, that appellee was engaged in business as a public service corporation, furnishing water to the public, in the city of Anniston. As a part of its water system, the defendant maintained water meters located between the curb of the streets and the sidewalks, in front of premises that were served with water. These meters were incased in a metal box, of circular form, about fifteen to sixteen inches in diameter, and about the same number of inches in depth, and so placed that the top of the opening was on a level with the surface of the ground. It is also averred that the metal boxes containing the meters were provided with a metal covering to protect the meters, and also to protect the public from falling into them.

It is averred that the covers were not provided with locking devices, that they were light, and easily removable. It is further averred that the metal covers on numerous such boxes, in use by the defendant in the city of Anniston, were being frequently removed and left open, and in such condition "were an open menace and danger to persons using the public sidewalk," and that numerous other persons beside the plaintiff had, within a few months prior to plaintiff's injury, sustained injury by falling or stepping into such meter boxes. All of which facts, it is averred in the seventh count of the complaint, the defendant, its agents or servants, acting in the line and scope of their duty, well knew.

In the eighth count, it is averred that "all of which facts the defendant, its agents or servants well knew, or by the exercise of reasonable diligence should have known."

The ninth count contains the allegation that such meter boxes were being frequently removed and left open, and in such condition were an open menace to persons using the sidewalks, and "constituted a public nuisance," and that the metal box into which plaintiff fell was in such condition at the time of plaintiff's injury.

Count 10, after averring the same general conditions as in counts 7 and 8, averred that such meter boxes were being frequently removed and left open, and alleges that the negligence of the defendant consisted in maintaining the said meter box in the condition it was in when the plaintiff fell into the same.

Count 11 is practically the same as count 10, with the addition of the following averment: "All of which facts, defendant, its agents or servants acting in the line and scope of their duty, well knew."

Count 12 is the same as count 10, with the following added averment: "All of which facts, defendant, its agents or servants acting in the line and scope of their duty, well knew, or by the exercise of reasonable diligence should have known."

It is not averred in any count of the complaint that the defendant acted, in installing the meters, without municipal authorization, nor is it made to appear that the defendant, or any of its agents, left the meter box, into which plaintiff fell, uncovered, or knew that this box was uncovered at the time the plaintiff received his injuries, or that it had been removed for such a length of time as would impute to defendant negligence in failing to discover and repair same. It is not averred that the meter boxes were not such as were in general use by other well-regulated companies engaged in similar business.

Construing the pleading most strongly against the pleader, it may be fairly inferred from the several counts of the complaint that the covering to the box in question was removed by some person other than an agent or servant of the defendant, and that neither the defendant, nor any of its agents or servants, knew that the covering had been removed from the box in question. The plaintiff grounds his cause of action upon the fact that the covering to the box was a light metal one, easily removable, was not provided with sufficient locking device, and that in other places in the city these covers had been from time to time removed, and other persons had fallen into the uncovered boxes and had suffered injuries, and that defendant or its agents or servants knew of those facts. It would appear, as for anything averred to the contrary, that the boxes were properly placed, of proper material, and, so long as

the covers were not interfered with, were not sources of danger to the public. That the danger would and did result only from the wanton or unlawful acts of third persons in removing the cover.

We have not been cited to any authority, either of our own court or elsewhere, which would require that locking devices should be provided for meter boxes installed along the streets to protect the boxes from the illegal, or wanton, acts of third persons. Nor have we been cited to any authority which holds that public service corporations, engaged in business similar to the business conducted by the defendant, should anticipate illegal or wanton depredations of third persons.

Our attention has been called by appellant to the case of Bridgeport Water Co. v. Goodwin, 132 Ala. 533, 31 So. 490, as supporting his contention that the several counts of the complaint sufficiently state a cause of action. It is unfortunate that the complaint is not set out in the report of that case. We have referred to the original transcript, and find that count 1 averred that the box into which plaintiff fell *had been carelessly and negligently left uncovered by the agents or servants of the defendant.* No one would doubt that, if the several counts of the complaint contained such an averment, the counts would be good as against the demurrer. Count 2 in the cited case charged that the defendant wantonly or intentionally left the box uncovered. The count, of course, with the other added averments, was good. The Bridgeport Water Company Case is not an authority in point. In that case, counts of the complaint showed a duty owing by defendant to the plaintiff, a breach of that duty, which proximately caused plaintiff's injury. If the meter box covering, located as it was between the sidewalk and the curb, was not subject to removal by the ordinary use of the sidewalk, and the removal of the covering was not an event which might reasonably have been foreseen, the defendant, under the holding in the Bridgeport Water Company's Case, breached no duty owed by it to plaintiff.

It is urged that our decision in the case of Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 130 So. 807, is an authority directly in point in support of plaintiff's cause of action alleged in the several counts of the complaint. We do not think so. In that case, the Morgan Hill Paving Company had, in the prosecution of its work, obstructed a much-used public highway, by the erection of a barricade across the road. It was the duty of the defendant to protect the public against injury on account of the obstruction, which, at nighttime, was highly dangerous to travelers along that road. The defendant had placed lights and danger signals on the

detour sign at the point of injury. On a number of occasions, these lights and danger signals were removed by intermeddlers. On the occasion of the accident, assuming that lights to warn the public were placed on the detour signs, they were lanterns hung on nails, and could be removed by the mere effort of lifting them off. This court held, under the facts in the case, that the intermeddling under the circumstances could not, as a matter of law, stand as the sole proximate cause of plaintiff's injury; that the jury had the right to find that it was defendant's duty to anticipate such intermeddling and to take proper and reasonable precaution to protect the public traveling the highway. The facts in that case differentiate it from the case now before us.

Much stress is laid by the appellant upon the holding of the Supreme Court of the United States, in the case of Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712. So far as pertinent to this case, the holding in that case was that it was the duty of the gas company to supervise and keep its gas boxes in repair; and if any injury happens to a person by reason of one of its gas boxes *being out of order and in need of repair and unsafe,* the gas company would be answerable to such a person in a proper action for damages. We assume that such would be the holding of this court in a similar case. There is no pretense in the instant case that the box unmolested was either unsafe, out of repair, or out of order. To the contrary, for aught averred, the box was in proper order, not out of repair, or otherwise unsafe, so long as it was not interfered with by intermeddlers; and, for aught averred to the contrary, was such a box as was in general use by other well-regulated companies doing a similar business.

We have carefully examined each other case brought to our attention by diligent counsel, and find nothing in them to warrant this court in holding that the court committed error in sustaining the defendant's demurrer.

The ninth count does not state a case showing that the defendant, in the prosecution of its business, maintained a public nuisance, in installing and maintaining its meter boxes in the mode and manner attempted to be charged in count 9.

The other counts charge negligence. Without conceding that the counts, or any one of them, stated a case of actionable negligence, it may be said that, however negligent a person may have been in some particular respect, he is liable only to those who may have been injured by *reason of such negli-*

*gence,* as the proximate cause. Where some independent agency has intervened and been the immediate cause of the injury, the party guilty of negligence, in the first instance, is not responsible. Alexander v. Town of New Castle, 115 Ind. 51, 17 N. E. 200. Of course, this pronouncement must be and is subject to the very just and wise limitation that if, at the time of the original negligence, the act of the independent agency could have been foreseen, the causal chain is not broken. Morgan Hill Paving Co. v. Fonville, supra; Lombardi v. Wallad, 98 Conn. 510, 120 A. 291; Knouff v. Logansport, 26 Ind. App. 202, 59 N. E. 347, 84 Am. St. Rep. 292; Austin W. Jones Co. v. State, 122 Me. 214, 119 A. 577; Lane v. Atlantic Works, 111 Mass. 136; Brower v. New York, C. & H. R. R. Co., 91 N. J. Law, 190, 103 A. 166, 1 A. L. R. 734; Hines v. Garrett, 131 Va. 125, 108 S. E. 690; Whitehead v. Stringer, 106 Wash. 501, 180 P. 486, 5 A. L. R. 358.

But generally speaking, "the proximate cause of an injury is the primary moving cause without which it would not have been inflicted, but which, in the natural and probable sequence of events, and without the intervention of any new or independent cause, produces the injury." City of Winona v. Botzet, 169 F. 321, 328, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204; Rollow v. Ogden City, 66 Utah, 475, 243 P. 791.

In the case of Mars v. Delaware & H. Canal Co., 54 Hun, 625, 8 N. Y. S. 107, it was held that where the plaintiff was injured by a "wildcat" engine negligently left unattended by the employee in charge, and started by some third person, the causal chain was broken by the act of the third person in starting the car.

In Bowers v. Southern Railway Co., 10 Ga. App. 367, 73 S. E. 677, it was held that negligence of a railroad company in leaving a switch unlocked was not to be regarded as the proximate cause of an injury which ensued because a willful and conscious trespasser, by a criminal act, turned the switch, whereby the train was wrecked and a person injured.

From what we have indicated above, we are at the conclusion that the several counts of the complaint were each subject to one or more of the grounds of demurrer directed thereto, and the court properly sustained the demurrers.

It follows, therefore, that the judgment of the circuit court is due to be here affirmed, and it is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.