1. It was not actionable negligence at common law, or is it under statute, for one to supply money to a person noticeably intoxicated for the purpose of purchasing and drinking whisky. The petition in this case alleged a chain of negligent acts, a combination of which allegedly caused *Page 380 
the death of the petitioner's husband. One of the vital links in the chain was the furnishing of money to the deceased by the defendant on the day of his death for the purpose of buying more whisky. Since this link in the chain was not negligence, the drinking of the whisky on the day of the death must be held to have been the proximate cause of the death, and the other alleged acts too remote to authorize recovery.
2. The petition was defective in failing to affirmatively allege the cause of the death.
 DECIDED DECEMBER 4, 1943. REHEARING DENIED DECEMBER 17, 1943.
Mrs. Nina D. Sturgis filed this action against the Henry Grady Hotel Company, her petition as amended alleging as follows: "1. That petitioner is the widow of George B. Sturgis, deceased. 2. That defendant to this action for damages is the Henry Grady Hotel Company, a corporation operating the Henry Grady Hotel, Atlanta, Georgia, and within the jurisdiction of this court. 3. That on January 7, 1939, George B. Sturgis entered the Henry Grady Hotel, on Peachtree Street, Atlanta, Georgia, without baggage, and sought to register as a guest in said hotel; that said Sturgis had been drinking intoxicating beverages and was in an ill and partly drunken condition at said time, and that his appearance showed and reflected such condition. 4. That J. T. Billingslea, the room clerk on duty in said hotel at said time, because the said Sturgis did not have any baggage, would not allow Sturgis to register until his registration was approved by an assistant manager of the hotel; and that Willis G. Poole, an assistant manager of said hotel, did approve his registration, and the said Sturgis was given a room on the seventh floor of said hotel, and took possession of same upon registering on January 7, 1939, as stated. That at said time, which was January 7, 1939, the room clerk, J. T. Billingslea, who was one of the clerks on duty at the time the said Sturgis registered in the hotel, and Willis G. Poole, an assistant manager of the hotel, were employees and agents or servants of said defendant and were acting within the scope of their authority; that Sturgis was assigned to room 744 in said hotel upon registering. Furthermore, that the said Sturgis was in an irrational condition at the time he registered, and that this fact was known to both the said Billingslea and Poole. 5. That shortly after registration, Sturgis requested a bell boy, who had shown him to his room, to get him some whisky and to charge same to his account, stating *Page 381 
that he had no money; but that the bell boy left the room and did not bring the whisky back as requested. That the name of the bell boy was C. M. Brown; that he was an employee of the defendant and was acting for the defendant and within the scope of his employment; that the said Brown knew that Sturgis was in an irrational condition and immediately after showing Sturgis to his room, upon registering, proceeded to the office of the assistant manager, Willis G. Poole, and told him of Sturgis' condition, and that Sturgis wanted the defendant to cash his check for $25. 6. That on the evening of January 7, 1939, Sturgis called assistant-manager Poole, and requested him to cash a check for $25, which was done, a portion of which sum was applied to his room-account, and a portion of which was given to Sturgis in cash, and immediately thereafter Sturgis called a bell boy and had him deliver him a bottle of whisky. That the name of the bell boy referred to is not known by defendant [plaintiff], but that he was one of the regular bell boys employed by defendant, and went to the room of Sturgis upon the latter's call to the service office of the defendant, and that he went to the room of Sturgis in the usual course and practice of this defendant rendering the service of bell boys to its guests; that said bell boy was an employee of defendant, acting as agent or servant for defendant and acting within the scope of his employment. 7. Petitioner shows that on January 8, 1939, which was on a Sunday, Sturgis called for a bell boy, and J. T. Sisk, one of the bell boys employed by defendant, answered the call, and said bell boy returned to Sturgis' room delivering him a pint of whisky. That the said J. T. Sisk, bell boy referred to in said paragraphs was an employee and agent or servant of defendant, and acting within the scope of his employment as such. 8. That on the same date, January 8, 1939, at about 8 p. m., bell boy J. T. Sisk, employee of said defendant, again answered a call from Sturgis, and at the request of the latter left the room and returned in a few minutes, bringing him another pint of whisky. That the said J. T. Sisk, bell boy referred to in said paragraphs, was an employee and agent or servant of defendant and acting within the scope of his employment as such. 9. Petitioner shows that defendant employed as a house officer or house detective, one C. W. Rushing, and a part of whose duty was to check the various rooms at night and see that the doors were kept locked, and that on both nights of January 7, and January *Page 382 
8, 1939, the said Rushing found the door to the room occupied by Sturgis unlocked, and entered same and requested Sturgis to lock the door from the inside; further, that Rushing, on each night, upon entering the room, observed that Sturgis was both ill and feeling bad effects from excessive drinking, and reported such condition to assistant-manager Poole. 10. On January 9, 1939, between 9 and 10 o'clock a. m., Sturgis again called for a bell boy, and U.S. Cook, who was a bell boy employed by the defendant, answered the call, and Sturgis requested him to get him a pint of whisky. Said Sturgis, at said time, was in an irrational and bad physical and mental condition, and the said bell boy seeing his condition, refused to get him any whisky, but the said bell boy did go to the assistant manager of the defendant, Willis G. Poole, and told him of the bad and irrational condition of the said Sturgis. Petitioner shows that soon thereafter on the same day, the said Poole communicated with the said Sturgis, and had a talk with him, at which time the said Sturgis was still in an irrational and bad physical and mental condition, and the said Sturgis told the said Poole that he, Sturgis, wanted more money to get some whisky to drink. Petitioner shows that the said Poole saw and knew of the said condition of Sturgis, but in spite of such condition, Poole gave Sturgis $4 with which to get more whisky, and then told Sturgis to bathe, get a shave, and get presentable to go home. Petitioner further shows that the said Sturgis did procure additional whisky with the said $4 given him by Poole, and that Sturgis' physical and mental condition became progressively worse until he was found dead as is hereinafter shown. Petitioner further shows that the said U.S. Cook and the said Willis G. Poole were at all times herein stated, duly authorized agents of the defendant and acting within the scope of their employment. 11. That Sturgis returned to his room, and no one employed by defendant visited him in his room during the rest of the day of January 9, 1939, until the night of the same date. 12. That during the afternoon of January 9, 1939, Sturgis went into the private bath adjoining his room and proceeded to get into the tub to take a bath, and was ill at the time, and upon turning on the hot water, both steam and water rushed out of the pipe into the tub and upon the body of Sturgis; and that the water was so hot that it was scalding and Sturgis suffered severe burns; but before losing consciousness shut off the faucet from which the water was running *Page 383 
and released the stopper from the drain in the tub. 13. Petitioner shows that there was a washer in or on the faucet where the water came into the tub that was defective and worn, and although the faucet was turned off, hot water continued to run or trickle from the faucet and into the tub and onto the body of Sturgis, while he lay in a helpless condition in the tub. 14. Petitioner shows that not until after 8 p. m. on the evening of January 9, 1939, did an employee of defendant enter the room of Sturgis. At about that time a bell boy entered the room, found Sturgis in the tub, badly burned and apparently dead. That Rushing, the hotel house officer was called, who in turn called the house physician, Dr. Marion C. Pruitt, and the latter pronounced Sturgis dead from burns from scalding. That the name of the bell boy referred to in said paragraph is Fred Johnson; that he entered Sturgis' room on the date and time mentioned at the instruction and direction of Mr. Billingslea, a room clerk employed by defendant and on duty at the time; that both Johnson and Billingslea were acting as agents or servants for the hotel and within the scope of their authority; that C. W. Rushing, house officer for defendant hotel, reached Sturgis' room at or about the same time that the said Johnson did; that the said Rushing went to the room at the instruction and direction of Willis G. Poole, assistant manager of the said hotel. 18. Plaintiff shows that for several days prior to the time George B. Sturgis, deceased, registered at the Henry Grady Hotel, as set out in her original petition, he had been ill, which caused him to be in a weakened and bad condition mentally and physically, and that his condition was known to the defendant by and through its duly authorized servants, agents, and employees, as heretofore shown in the plaintiff's original petition and in this amendment. 19. Plaintiff shows that although the defendant knew of the mental and physical condition of the said George B. Sturgis, and knew that his physical condition was such that he was incapable of taking care of himself, and that he was in no physical or mental condition to have any whisky or to drink same, nevertheless, the defendant by and through its duly authorized servants, agents, and employees, did furnish the said George B. Sturgis, the deceased,. with money with which to buy whisky, and did actually furnish and supply him with whisky, as is more specifically set out and shown in the plaintiff's original petition and in this amendment. Plaintiff *Page 384 
further shows that the furnishing of said whisky by the defendant, as heretofore shown, directly caused the mental and physical condition of said George B. Sturgis to become progressively worse, and which finally culminated in the death of the said George B. Sturgis, as heretofore set out and shown. 20. Plaintiff further shows that the said George B. Sturgis, at the time he registered at the defendant's hotel, did not have any money with which to purchase any whisky, nor could he procure any whisky, all of which was known to the defendant by and through its servants, agents, and employees, as heretofore set out and shown in the plaintiff's original petition and in this amendment. Plaintiff shows that although defendant knew of these facts, and further knew that George B. Sturgis, the deceased, was in no condition to have any whisky, and was in a helpless condition, the defendant, by and through its servants, agents, and employees, deliberately supplied him with money and whisky, as heretofore shown, well knowing that such action on the part of defendant would be detrimental to the said George B. Sturgis, and would probably result in serious injury to him. 21. Petitioner shows that defendant was negligent in the following respects and for the following reasons: (a) In not having reliable and workable water faucet in the bath room occupied by the deceased, Sturgis. (b) In keeping and maintaining defective and worn-out faucet and water-faucet fixture in the bath room, in its building, occupied by the deceased Sturgis, and rented to him by defendant. (c) In allowing and maintaining too great a water pressure in its building, and in allowing and maintaining the use of water of a scalding degree. (d) In failing to have an employee cut off the water in the room occupied by the deceased, Sturgis, after discovering that same was running and knowing that the deceased, Sturgis, was ill. (e) In failing to call the house physician to examine the deceased, Sturgis, upon receiving notice from several of its employees on January 7, 1939, that the deceased, Sturgis, was in his room ill, and in failing to notify friends, or the wife of the deceased, Sturgis, of his condition, having knowledge of same. (f) For failure, on January 9, 1939, after having personally notified the deceased, Sturgis, to return to his room and prepare to check out, to inquire during the balance of the day, and until after 8 p. m. on said date the condition and what had happened to the deceased, Sturgis, in the meantime, having *Page 385 
knowledge that the deceased, Sturgis, was in a bad and dangerous condition physically. (g) For the furnishing of the deceased Sturgis with whisky on January 7, 8, and 9, 1939, with knowledge that the said Sturgis was in no physical condition to have same. (h) For furnishing the deceased, Sturgis, with whisky on Sunday, January 8, 1939, in violation of the law of the State of Georgia, and of the City of Atlanta. 22. Plaintiff further shows that the negligence of the defendant in furnishing the said George B. Sturgis the whisky as heretofore shown, and in failing to supply him with the necessary medical and other attentions required by his helpless condition, while a guest of the defendant, coupled with the other acts of negligence set out and shown in the plaintiff's original petition, directly brought about and caused the death of the said George B. Sturgis, as set out and shown in the plaintiff's original petition and in this amendment. 23. Petitioner shows that the deceased, Sturgis, by the use of ordinary care was unable to avoid the damage sustained by him. 24. Petitioner shows that the damage herein sustained was the direct and approximate result of the negligence of the defendant."
The court sustained the special demurrer to that portion of paragraph 15 of the original petition which was added by amendment alleging that the deceased had been promised a position with the State of Georgia, and overruled the other demurrers. The exception here is to the overruling of the demurrers of the defendant.
1. This is a common-law action based not upon one act of negligence, but upon a series of acts, a combination of which allegedly caused the injury complained of. It will not be necessary to examine all the acts of negligence. We shall put our finger on one alleged act which breaks the chain. When the chain is broken the question whether the remaining acts of negligence proximately caused the injury is one of speculation and conjecture and falls within the provisions of the Code, § 105-2008, which provides: "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong doer." At common law there *Page 386 
was no right of recovery for selling or furnishing intoxicating liquor to an intoxicated person. Belding v. Johnson, 86 Ga. 177
(12 S.E. 304, 11 L.R.A. 53). Whatever the reasons for such a rule, and whether we agree or disagree with them, the courts have no authority to grant recoveries or authorize actions unknown to the common law. That is a matter for the legislature. As was said in Seibel v. Leach, 233 Wis. 66 (288 N.W. 774), "Courts may in proper instances apply old rules to newly created conditions, but they cannot create new rules for conditions already regulated. The common-law rule holds the man who drank the liquor liable and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink." Since no recovery could be had under common-law principles for the selling or furnishing of whisky to an intoxicated person, the only other question to be decided is whether Ga. Code Ann. § 58-1061, authorizes a recovery for such an act. That section provides: "Any person who, by himself or another, shall furnish or cause to be furnished, or permit any person in his employ to furnish alcoholic, spirituous liquors, or beverages to any minor, to any person who is noticeably intoxicated, or to any habitual drunkard whose intemperate habits are known to such person, shall be guilty of a misdemeanor, and upon conviction, shall be punished as for a misdemeanor." The quoted section is a criminal law and must be strictly construed. It provides against the selling orfurnishing of alcoholic, spirituous liquors, or beverages.
It does not prohibit the furnishing of money or other exchangeable article to be used for the purpose of buying liquor. The section does not penalize the purchase or reception of the liquid by the intoxicated person, so the person who furnished the money for the purpose of purchase would not be guilty as an accessory before the fact because he would not have procured, counseled, or commanded another to commit a crime. As an act cannot be regarded as negligence which one has a legal right to do, the furnishing of the money for the purchase of the whisky would not be an act of negligence under the common law, where the whisky was legal, nor under the statute mentioned, because it does not penalize the act in question. The drinking of the whisky purchased with the $4 allegedly furnished therefor is a strong link in the chain of acts of negligence alleged and the alleged death very soon followed. If the defendant was not *Page 387 
legally responsible for this link in the chain, the cause of the injury is speculative. It is not alleged or contended that all of the other acts of alleged negligence would have caused the injury. We are not deciding that the other alleged acts were or were not negligent. We only hold that omitting the act of furnishing the money, the proximate cause of the injury was the drinking of the whisky by the deceased on January 9, and that the other alleged causes are too remote. The principle announced inBennett Drug Stores v. Mosely, 67 Ga. App. 347
(20 S.E.2d, 208), is not applicable in this case for the reason that the statute here involved was not enacted for the purpose of protecting the injured person from one acted for the purpose of protecting the injured person from one who furnished money to him for the purpose of buying whisky. It is not necessary under the above ruling to decide the various other questions raised by the demurrers.
2. The petition is also defective in that it does not affirmatively allege that the death was attributable to scalding. The allegation that Dr. Marion C. Pruitt pronounced the deceased dead from burns from scalding is a hearsay allegation.
The special demurrers, except as indicated by the above rulings on the general demurrer, were properly overruled, so far as questions considered and decided are concerned.
The court erred in overruling the general demurrer.
Judgment reversed. Stephens, P. J., and Sutton, J., concur.