## 49457. WARNER v. ARNOLD et al.

STOLZ, Judge.

On or about June 4, 1972, a burglar broke into an apartment rented and occupied by Bobbie Arnold and Mildred L. Arnold (plaintiffs) and set a fire which caused damage to certain items of personal property owned by Mr. and Mrs. Arnold located in the apartment. At the time of the break-in and fire, the apartment building was owned by Dr. Clinton L. Warner (appellant), who had purchased it in 1968. At the time of the purchase of the apartment by Dr. Warner, Lottie Watkins Enterprises, Inc. was managing it for the previous owner and

continued to do so for Dr. Warner under an oral agreement. This oral agreement provided that Lottie Watkins Enterprises would take care of routine maintenance and repairs, collect rents, pay the bank note, water and security light bill. Dr. Warner paid a 5% commission on all rents collected for these services. Evidence showed that, while minor repairs and maintenance could be accomplished without consulting the owner, any major work was done only after owner approval. As an example, the installation of a security light at the rear of the apartment building was done only after obtaining owner approval. This item involved an expenditure of $4.62. The owner paid separately for all repairs, maintenance and improvements. By deposition, plaintiff Mildred Arnold testified that, as a result of numerous break-ins at other apartments in the building and observing other tenants open the doors to their apartments with a knife or sharp instrument, she called Lottie Watkins Enterprises, Inc., in January or February, 1972, and requested an additional lock for the apartment door. At the time, plaintiff Mrs. Arnold was advised that another lock could be put on the door for $12 or $14. After ordering the $12 lock, said plaintiff was told that a man would be sent right out to install the lock. This was not done. In late February or early March, 1972, plaintiff Bobbie Arnold called Lottie Watkins Enterprises about the lock, but no response was forthcoming. The break-in and fire, with resulting damage, occurred on June 4, 1972.

Defendant Dr. Warner moved for summary judgment and now appeals from its denial via certificate for immediate review.

The basis of the appeal is that (1) Lottie Watkins Enterprises, Inc. was an independent contractor and hence the principal would not be liable for the negligent omission; (2) the intervening criminal act was not foreseeable by the owner and was itself the proximate cause of the plaintiffs' damages. *Held:*

1. Motions for summary judgment are granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law. Code Ann. § 81A-156 (c) (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238). "The party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence." *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5 (126 SE2d 442).

"The test to be applied in determining the relationship of the parties is whether the contract gives, *or the employer assumes,* the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract. [citing case] 'The employer is liable for the negligence of the contractor . . . If the employer retains the right to direct or control the time and manner of executing the work; or interferes and assumes control, so as to create the relations of master and servant . . .' Code § 105-502." *Greenbaum v. Brooks,* 110 Ga. App. 661, 664 (139 SE2d 432) and cits.; *Golosh v. Cherokee Cab Co.,* 226 Ga. 636 (176 SE2d 925); *Mitchem v. Shearman Concrete Pipe Co.,* 45 Ga. App. 809 (1) (165 SE 889).

Applying the foregoing principles to the facts in the case at bar, we must conclude that the relationship between Dr. Warner and Lottie Watkins Enterprises, Inc., presents a factual question for the jury to determine.

2. Generally, where there has intervened between the defendant's negligence and the injury an independent, illegal act of a third person producing the injury, and without which it would not have occurred, such independent criminal act should be treated as the proximate cause, insulating and excluding the negligence of the defendant. See *Andrews v. Kinsel,* 114 Ga. 390 (2) (40 SE 300, 88 ASR 25); *Belding v. Johnson,* 86 Ga. 177 (12 SE 304, 11 LRA 53); *Bowers v. Southern R. Co.,* 10 Ga. App. 367 (3), 373 (73 SE 677); *Gulf Oil Corp. v. Stanfield,* 213 Ga. 436 (99 SE2d 209); *Henderson v. Dade Coal Co.,* 100 Ga. 568 (28 SE 251, 40 LRA 95); *Daigrepont v. Teche Greyhound Lines,* 189 Ga. 601, 605 (7 SE2d 174, 127 ALR 217); *Rivers v. Weems,* 208 Ga. 783, 784 (69 SE2d 756); *Gallovitch v. Ellis,* 55 Ga. App. 780 (191 SE 384).

However, the above rule has been held inapplicable if the defendant (original wrongdoer) had reasonable grounds for apprehending that such criminal act would be committed. *Williams v. Grier,* 196 Ga. 327, 338 (26 SE2d 698) and cits.; *Southern R. Co. v. Webb,* 116 Ga. 152 (1) (42 SE 395, 59 LRA 109). "So far as scope of duty (or, as some courts put it, the relation of proximate cause) is concerned, it should make no difference whether the intervening actor is negligent or intentional, or criminal. Even criminal conduct by others is often reasonably to be anticipated." Harper & James, The Law of Torts, Vol. 2, § 20.5, p. 1144. Thus, if a person leaves a borrowed car on the streets of almost any city with the doors unlocked and key in the ignition, that person is negligent (at least toward the owner) because of the very likelihood of theft. In Hines v. Garrett, 131 Va. 125 (108 SE 690), the railroad which negligently carried an 18 or 19-year-old girl past her destination and required her to leave the train at a notoriously dangerous neighborhood, was held liable in damages for the girl's rape while walking back to her destination (case reversed on other grounds). See also Brauer v. New York Central &c. R. Co., 91 N. J. L. 190 (103 A 166, 1 ALR 734). In Mozer v. Semenza, 177 S2d 880, the Florida Court of Appeals affirmed a verdict in favor of a guest against the hotel owner where damages resulted from a fire caused by an arsonist. Evidence showed that the hotel owner had been warned that the building's unenclosed stairwell constituted a hazardous condition, but did nothing to correct it. The issue of intervening causation was squarely presented and rejected by the Florida court. In so doing, it observed, on p. 883: "The scope of defendant's duty to maintain reasonably safe premises does not include a duty to foresee a particular fire but it does include a duty to reasonably guard against the risk of fire. Viewed from this standpoint it is not important to the liability of the appellant whether the fire started in one way or another. It was reasonably foreseeable that there would, even under modern conditions, be a likelihood of fire and it was the duty of the defendant to provide a reasonably safe place in anticipation of that danger. [Cits.]"

In Ramsey v. Morrissette, 252 A2d 509 (D. C. App.),

a landlord of an apartment house was alleged to have been negligent in failing to install a lock on the front door, failing to prevent intruders and strangers from using halls as urinals, and from sleeping in the hallway, in a case where an intruder forced his way into the plaintiff's apartment and assaulted her. The trial court's grant of the landlord's motion for summary judgment, was reversed. In so doing, the court held, on pp. 511-513: "as a general rule, a landlord has no duty to protect a tenant, or a tenant's property, from criminal acts of third persons. . . We have heretofore made clear as to apartment houses, the reasons which underlie the landlord's duty under modern conditions and which, as to various hazards, call for at least 'reasonable or ordinary care, which means reasonably safe conduct, but there is no sufficient reason for requiring less.' True, the landlord does not become a guarantor of the safety of his tenant. But, if he knows, or in the exercise of ordinary care ought to know, of a possibly dangerous situation and fails to take such steps as an ordinarily prudent person, in view of existing circumstances, would have exercised to avoid injury to his tenant, he may be liable. . . The court also stressed that 'particular conduct, depending upon circumstances, can raise an issue for the jury to decide in terms of negligence and proximate cause.' [Cit.] . . . The test is what is reasonable in all the circumstances. And we point out that if in these changing times of modern urban living circumstances exist which may require that the landlord's duty of reasonable care encompass steps to deter or prevent criminal acts against his tenant, these same circumstances affect the tenant's concomitant duty to use reasonable care for his own safety."

In the case before us, it is contended that the lock to the plaintiffs' apartment was a functioning lock and that the plaintiffs accepted the apartment "as is." Though the lock may be said to be "functioning," it does not follow that the lock was "functional," that is, capable of adequately performing or serving the function to which it was put. There exists today a variety of locks, each designed to provide a different measure of security according to the needs of the individual and his property.

For example, a lock suited for use on interior doors might not be adequate to secure the exterior door of an apartment.

Georgia case law has recognized that suitability is important in determining whether a duty to repair exists for which liability may be imposed. For example, where certain types of window panes, suitable for one use, have been found unable to withstand the strains placed upon them in other, more rigorous uses, a duty to repair has been found and liability for damages awarded. *Sinkovitz v. Peters,* 5 Ga. App. 788 (64 SE 93); *Dawson v. American Heritage Life Ins. Co.,* 121 Ga. App. 266 (173 SE2d 424). And from the Georgia Code, §§ 61-111 and 61-112, has been derived the principle that suitability for the use "intended by the lessee and known to the lessor" is assured. *Point Apartments v. Bryant,* 99 Ga. App. 110, 113 (107 SE2d 684). See also *Stack v. Harris,* 111 Ga. 149 (36 SE 615).

"The landlord is no insurer of his tenant's safety, but he is certainly no bystander." Kline v. 1500 Mass. Ave. Apt. Corp., 141 App. D. C. 370 (439 F2d 477, 43 ALR3d 311). This premise and the authority previously cited, is coupled with the undeniable fact that the purpose for having secure locks on the door to the plaintiffs' apartment, was to prevent unauthorized entry thereto and the accompanying wrongful criminal acts. The immediacy of the connection between the inadequate (although functioning) lock, the landlord's notice of the inadequacy, either actual or constructive, and the burglary and arson, compels us to hold that the landlord is not insulated as a matter of law, and that the jury should properly pass on the questions of agency, notice, foreseeability, intervening causation, assumption of risk, as well as the suitability of the lock in question.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*

Argued June 26, 1974 — Decided October 15, 1974 — Rehearing denied October 30, 1974 —

*Greer, Pollock & Klosik, Kenneth C. Pollock,* for appellant.

*Scheer & Elsner, Robert A. Elsner,* for appellees.