Bruce A. DECKER, Shelley R. Decker, Henry L. Etheridge and Phillip O. Etheridge, minors, by and through their Grandmother Hazel M. Dunsmore, as Custodian and by Hazel M. Dunsmore, as Administratrix of Estate of Delia Loretta Etheridge

v.

GIBSON PRODUCTS COMPANY OF ALBANY, INC.

Civ. A. No. 80–37–ALB.

United States District Court,
M. D. Georgia,
Albany Division.

Oct. 16, 1980.

Thomas & Thomas, Maryville, Tenn., H. P. Burt, Larry Butler, Burt, Burt & Renzt, Albany, Ga., for plaintiffs.

William E. Cannon, Jr., Landau & Davis, Albany, Ga., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

OWENS, Chief Judge.

On March 2, 1979, Johnny Etheridge purchased a .38 caliber handgun from the sporting goods department at Gibson's Discount Center, operated by defendant in Albany, Georgia. Immediately prior to the purchase of the handgun, Johnny Etheridge advised the Gibson's employee that he was a convicted felon, having been convicted of aggravated assault in Dade County, Florida, and sentenced to serve eighteen months in the Florida State Prison. Mr. Etheridge also advised the employee that he had received a pardon from the State of Florida on December 13, 1972, and exhibited to the employee a copy of his Restoration of Civil Rights form. Two days later, on March 4, 1979, Johnny Etheridge used the .38 caliber handgun to willfully and intentionally murder his former wife, Delia Loretta Etheridge, mother of the herein named plaintiffs.

18 U.S.C.A. § 922(d) provides in part: "It shall be unlawful for any ... licensed dealer ... to sell ... any firearm ... to any person knowing or having reasonable cause to believe that such person ... has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ...."

Based upon that criminal statute, plaintiffs urge the court to recognize a private cause of action in favor of individuals injured by *weapons purchased in violation of the act.*

In support of the existence of a private cause of action, the plaintiffs can offer but one case, a decision handed down by the Arkansas Supreme Court in 1977, *Franco v. Bunyard*, 547 S.W.2d 91. Plaintiffs rely on the *Franco* court's conclusion that the tragedies could not have occurred if the federal law had been obeyed. Moreover, the very purpose of the law, as interpreted by the *Franco* court was to keep pistols out of the hands of criminals, and since the purchaser in *Franco* was both a convicted criminal and a fugitive from justice, it could not be said that his use of the gun in such a way to injure others was not foreseeable. Finally,

plaintiffs point to language in *Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974), and cited by the *Franco* court:

> "When Congress enacted the provisions under which petitioner was convicted, it was concerned with the widespread traffic in firearms and with their availability to those whose possession thereof was contrary *to the public interest*." (emphasis supplied).

Based on *Franco*, plaintiffs contend, a cause of action will lie.

The defendant however urges the court to decline this opportunity to adopt *Franco*. Using plaintiffs' citations, they contend that "the public interest" is one which does not create a plaintiff class for whose special benefit the statute was enacted. *United States v. Capeletti Bros., Inc.*, 621 F.2d 1309 (5th Cir. 1980). Since there was no congressional intent to create a private cause of action in plaintiffs' favor, defendant argues that any claim arising under federal law must be dismissed.

■ In deciding whether a private cause of action is implied from a federal criminal statute, this court is guided by the four-factor test handed down by a unanimous Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

> "First, is the plaintiff 'one of a class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the Plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

422 U.S. at 78, 95 S.Ct. at 2087 (citations omitted).

■ Applying § 922 to *Cort*, the court is unable to conclude that Congress intended to grant a private right of action.

■ First, the plaintiffs are not one of the class for whose *especial* benefit the statute was enacted. The statute is silent on the question of relief for victims. The legislative history reveals that the purpose of the statute was to keep "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, *and* to assist law enforcement authorities in the states and their subdivisions in combatting the increasing prevalence of crime in the United States." 1968 U.S.Code Congressional and Administrative News, pp. 2112, 2113–2114. The "Findings and Declarations of Purpose" have been restated so as to emphasize the concern of Congress over the startling increase in the crime rate and the threat which this poses to the peace, security, and general welfare of the Nation and its citizens. The plain intent of the legislative history was to protect each citizen against the rising crime rate. There was, in fact, no class created for whose especial benefit the statute was enacted. Clearly, the unfortunate, but inevitable, fact that certain individuals would suffer an injury greater than the citizenry was but a secondary concern of Congress.

■ Second, there is no indication in the legislative history of § 922 which suggests a congressional intention to vest in those victims injured by firearms obtained in violation of § 922 a federal right to damages. A careful reading of the legislative history suggests that Congress intended the section to thwart the unlawful disposition of firearms at its inception rather than provide retrospective, remedial relief. This is evidenced by the legislative history's emphasis on increased law enforcement assistance and by the desire of Congress to afford relief to the Nation, rather than its injured victims.

■ Third, the remedy sought—compensation to injured victims and their families—does not aid the primary Congressional goal. That insurance contracts would cover any benefits payable to victims im-

plies that both legitimate and illegitimate purchasers would pay for the violations through increased prices; as a consequence, compelled payments to victims "might well not deter the initial violation . . . ." 422 U.S. at 84, 95 S.Ct. at 2090.

Moreover, § 922 declares illegal only those dispositions by dealers to "person[s] *knowing or having reasonable cause to believe that such person* . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . ." To imply a private cause of action would encourage firearms dealers to remain ignorant of those facts incident to a firearms transaction which, through hindsight, might well impute both criminal and civil liability. This type of ignorance would increase the availability of firearms to felons by reducing the initial investigation of the purchaser at the time of the sale or acquisition. As a consequence the primary goal of the Firearms Act would be undermined.

■ Fourth, the cause of action, if compensable, can be remedied by state law. The relief sought is for all practical purposes that of wrongful death. Under Georgia's wrongful death statute, Ga.Code Ann. § 105–1301 *et seq.*, a cause of action may lie against a firearms dealer where the violation is such that the dealer had reasonable grounds for apprehending that such criminal act would be committed. *Warner v. Arnold*, 133 Ga.App. 174, 210 S.E.2d 350 (1974). Given the description of the facts in the *Franco* case, *supra*, in which the firearms dealer sold a weapon to a fugitive felon, it is reasonable to conclude that the dealer in *Franco* had the requisite apprehension of the homicide. Accordingly, the family of the victim could have pursued their state law remedies without the creation of a private right of action under § 922. In the instant case, the creation of a duty owed the victim and her family by the firearms dealer is best committed to state law.

Two observations are to be implied from cases such as this—first, the actors who pull the trigger in homicide cases are generally judgment-proof; and, two, the firearms dealers, who are covered by insurance, are generally the "deep pockets." To construct a bridge which provides direct access to the "deep pockets," is a duty delegated to the Congress and/or the legislatures of this state; absent a clear intent of those bodies, which is not present in the language under scrutiny here, this court will not create or extend § 922 beyond that intent which is plain and unambiguous.

■ Under a common law negligence theory, plaintiffs contend that the negligence of the defendant was a proximate contributing cause of the death of plaintiffs' mother. The general rule is that where there has intervened between the defendant's negligence and the injury an independent, illegal act of a third person producing the injury, and without which it would not have occurred, such independent criminal act should be treated as the proximate cause, insulating and excluding the negligence of the defendant. *Belding v. Johnson*, 86 Ga. 177, 12 S.E. 304 (1890); *Warner v. Arnold, supra.* The rule is inapplicable if the original wrongdoer had reasonable grounds for apprehending that such criminal act would be committed. *Warner v. Arnold, supra,* 133 Ga.App. at 177, 210 S.E.2d at 350. The question of whether the defendant could have reasonably foreseen the chain of events which led to plaintiffs' mother's death presents no genuine issue as to any material fact; it is therefore proper for summary judgment. Fed.R.Civ.P. 56(c).

■ The uncontradicted facts establish that Johnny Etheridge was convicted in Dade County, Florida on May 24, 1967 of the offense of aggravated assault, and sentenced to serve eighteen months in the state prison. On December 13, 1972, he received a restoration of civil rights from the State of Florida. On March 2, 1979 Mr. Etheridge purchased a .38 caliber handgun from the defendant; Mr. Etheridge disclosed his prior conviction and pardon. The defendant's employee handling the sale, Fred Berry, contacted the sheriff of Dougherty County and was advised that it was permissible to sell the weapon to Johnny

Etheridge. Based on these undisputed facts, no reasonable trier of fact could conclude that the defendant or its employees could have foreseen Mr. Etheridge's propensity to use the weapon for an illegal act.

Accordingly, defendant's motion for summary judgment is hereby GRANTED.