CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellee, *v.* KAMAKICHI TOYAMA, dba K. T. Poolroom, et al., Defendants-Appellants

and

CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellee, *v.* ESTANISLAO BALAIS, Defendant-Appellant

NO. 6363

JULY 23, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND RETIRED JUSTICES MARUMOTO AND KOBAYASHI ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* This is an appeal from an order of the circuit court, granting summary judgment for summary possession to plaintiff-appellee City and County of Honolulu (hereinafter appellee) against defendant-tenant-appellants Kamakichi Toyama, dba K. T. Poolroom, Fusako Chinen, dba New Kukui Cafe, Bacilio Balalong, Margaret Balalong, Hilario Gungab, Magdalena Gungab, Victorino Nabora, Marina Nabora, Rufino Ramos, Sotera Ramos, Mariano Tarampi, Rita Tarampi, Arnold Ramos, Luis Mendoza, Ricarte Vidad, and Estanislao Balais (hereinafter appellants).

In the court below appellee brought an action for summary possession against appellant Estanislao Balais and a separate action for summary possession against all the other appellants. These actions were consolidated.

After a hearing, the trial court granted appellee's motion for summary judgment. The writ of possession issued by the trial court was stayed pending appeal to this court. We reverse.

## ISSUES

I. Whether appellants received timely notice under HRS § 521-71(a)(1976).

II. Whether adequate relocation assistance was offered to appellants.

III. Whether appellees' failure to give appellants notice

158

and a hearing regarding demolition of the buildings was in violation of due process.

Under H.R.C.P., Rule 56(c), a summary judgment will be sustained only if the record[1] shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hunt v. Chang,* 60 Haw. 608, 618, 594 P.2d 118, 124 (1979); *Gealon v. Keala,* 60 Haw. 513, 518, 591 P.2d 621, 625 (1979). Inferences to be drawn from the record must be viewed in the light most favorable to the nonmoving party. *Hunt v. Chang, supra,* 60 Haw. at 618, 594 P.2d at 124; *Hokama v. Relinc Corp.,* 57 Haw. 470, 472, 559 P.2d 279, 281 (1977).

For purposes of ruling on a summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Hunt v. Chang,*

---

[1] A few days prior to oral argument, appellee filed several documents, captioned "First additional statement of facts, affidavit of Robert Lum, and exhibit A", in this court. These documents pertain to matters outside the record. H.R.C.P., Rule 75(a). HRS § 641-2 (1976) states in pertinent part:

. . . .

Every appeal shall be taken on the record and no new evidence shall be introduced in the supreme court. The supreme court may correct any error appearing on the record, but need not consider a point which was not presented in the trial court in an appropriate manner. . . .

This court may not consider matters outside the record for purposes of appellate review unless the parties comply with H.R.C.P., Rule 75(c), *Pickering v. State,* 57 Haw. 405, 409, 557 P.2d 125, 128 (1976); *Orso v. City and County of Honolulu,* 55 Haw. 37, 39, 514 P.2d 859, 861 (1973), the briefs of the parties treat certain facts as true, *State v. Apao,* 59 Haw. 625, 628 n. 1, 586 P.2d 250, 254 n. 1 (1978), or counsel concedes certain facts in oral argument, *Bagalay v. Lahaina Restoration Foundation,* 60 Haw. 125, 134 n. 4, 588 P.2d 416, 423 n. 4 (1978). Furthermore, for purposes of appellate review, this court cannot consider matters outside the record which could not have been considered by the trial court at the time its judgment was rendered. *Ellison v. McGlaun,* 482 S.W.2d 304, 306 (Tex. Civ. App. 1972).

We cannot consider appellee's first additional statement of facts, affidavit of Robert Lum, and Exhibit A. No statement regarding these documents was settled and approved pursuant to H.R.C.P., Rule 75(c). The parties' briefs do not refer to matters contained in these documents. Moreover, these documents pertain to matters which occurred subsequent to the trial court's granting summary judgment and which therefore could not have been considered by the trial court.

*supra,* 60 Haw. at 618, 594 P.2d at 124. *See Richards v. Midkiff,* 48 Haw. 32, 39, 396 P.2d 49, 54 (1964).

I.  WHETHER APPELLANTS RECEIVED TIMELY NOTICE UNDER HRS § 521-71(a) (1976).

Appellants contend that appellee failed to comply with the notice requirements of HRS § 521-71(a) (1976) and of the regulations[2] promulgated under the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.[3]

Initially, we conclude that the Uniform Relocation Assistance and Real Property Acquisition Policies Act is not within our purview, as it was not introduced in evidence. HRS § 662-13(a) (1976).[4]

HRS § 521-71(a) (1976)[5] provides:

(a)  When the tenancy is month to month, the landlord or the tenant may terminate the rental agreement upon his notifying the other at least twenty-eight days in ad-

---

[2] Appellee cites the regulations at 24 C.F.R. § 42.137(b)(6) (1976).

[3] The federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 may be found at 84 Stat. 1894, 42 U.S.C. § 4601 *et seq.*

[4] HRS § 622-13(a) (1976) provides:
Whenever, in any proceedings before a court or person having authority to hear, receive and examine evidence, it is necessary to prove any ordinance of any county of the State, or any law, rule, regulation, or other official act or thing promulgated or enacted by or under authority of the Constitution and laws of the United States or the State, a copy of such ordinance, bearing the certificate, as to its correctness, of the county clerk and under the seal of the county, or a copy of the law, rule, regulation, or other official act or thing, printed by authority, or bearing the certificate, as to its correctness, of the official in whose custody the original is kept, shall be admitted in evidence as prima facie proof of the contents thereof.

[5] HRS § 521-71(a), as amended by Act 104, S.L.H. 1975, became effective on May 17, 1975.

vance of the anticipated termination or in cases of voluntary demolition of the dwelling units, ninety days in advance of the anticipated demolition. If notice is revoked or amended and re-issued, the ninety day period shall begin from the date it was re-issued or amended.

Appellants contend that appellee was required to give notice "ninety days in advance of the anticipated demolition" because this is a case of "voluntary demolition" under HRS § 521-71(a) (1976).

Webster's Third New International Dictionary (unabridged, 1967) defines "voluntary", in part, as follows:

1. a: proceeding from the will; produced in or by an act of choice . . .; b: performed . . . of one's own free will . . .; e: acting of oneself: not constrained, impelled, or influenced by another . . .; g: acting or done without any present legal obligation to do the thing done or any such obligation that can accrue from the existing state of affairs.

It is undisputed that on September 26, 1975, the City Building Department sent notices to correct to the City Department of Housing and Community Development (DHCD) regarding the buildings at 139-143 North Beretania Street, 155 North Beretania Street, and 1189 River Street, stating that inspectors from the City Building Department had inspected the buildings and

found substandard condition(s) . . . which endangers life, limb, health, property, safety or welfare of the public or the occupants of the building.

The notice to correct regarding the building at 139-143 North Beretania Street stated:

Please take the necessary step(s) within 48 hours to *correct the deficient condition(s)* and to complete such *repairs* within 90 days. (Emphasis added.)

However, the DHCD decided to demolish the structure instead of making the necessary repairs to the building. The notices to correct regarding the buildings at 155 North Beretania Street and 1189 River Street stated:

Please take the necessary steps within 48 hours to *demolish and remove the structure* and complete all such

*demolition work* within 90 days from receipt of this notice. (Emphasis added.)

In regard to the buildings at 139-143 North Beretania Street, this is a case of "voluntary demolition." Although the City Building Department's notice to correct directed only that the DHCD make repairs "to correct the deficient condition(s)," the DHCD chose to demolish the building.

Notwithstanding the fact that the City Building Department's respective notices to correct directed the DHCD to demolish the buildings at 155 North Beretania Street and 1189 River Street, the decision to demolish these buildings was also voluntary. Appellee's Building Department and appellee's Department of Housing and Community Development are both departments of the executive branch of appellee and are both supervised by appellee's managing director. Charter of the City and County of Honolulu, art. VI, §§ 4-102, 6-102 (1973). The different departments do not constitute legal entities which are separate and apart from appellee.

Since, as to all the buildings herein, this is a case of "voluntary demolition," appellee was required under HRS § 521-71(a)(1976) to notify all of the appellants "ninety days in advance of the anticipated demolition." There is no dispute that on September 30, 1975, DHCD sent each of the appellants a notice to vacate and that all of the appellants received the notice between October 1 and 7, 1975. It is also undisputed that on October 29 or 30, 1975, DHCD personally served all of the appellants except appellant Balais with notices to vacate. The record does not disclose the date of the "anticipated demolition."

In our opinion, since the record does not show that the appellants received notice "ninety days in advance of the anticipated demolition," the trial court erred in granting summary judgment. The action filed by appellee should have been dismissed. Assuming, *arguendo*, that appellants had received timely and proper notice, the trial court erred in granting summary judgment without first resolving the issues of the adequacy of relocation assistance and appellants' right to notice and a hearing regarding demolition of the buildings.

## II. WHETHER APPELLANTS RECEIVED ADEQUATE RELOCATION ASSISTANCE.

Appellants in their arguments rely upon the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 84 Stat. 1894, 42 U.S.C. § 4601 *et seq.*, and upon the State Assistance to Displaced Persons Act, HRS § 111-1 *et seq.* (1976).

As we have stated heretofore, we will not consider the federal act on this appeal since it was not introduced in evidence pursuant to HRS § 622-13(a) (1976).

Appellants contend that appellants are "displaced persons" as defined in HRS § 111-2 and therefore have rights to adequate relocation assistance, that state relocation assistance laws require the City to provide appellants with adequate relocation assistance prior to eviction, and that the DHCD's relocation housing referrals failed to satisfy the statutory requirements.

The State Assistance to Displaced Persons Act, HRS Ch. 111 (1976) (hereinafter Act), provides that a state agency must offer relocation assistance to persons it displaces. In *Lau v. Bautista*, (No. 6298), decided today, we construed the Act to require that adequate relocation assistance be offered to displaced persons prior to eviction.

There is no doubt that all of the appellants are "displaced persons" as defined in HRS § 111-2 (1976).[6] The appellants are all "persons" as defined in § 111-2 (1976). The City

---

[6] HRS § 111-2 (1976) provides the following definitions:

As used in this chapter, the term:

"Person" means (1) any individual, partnership, or corporation or association which is the owner of a business; (2) any owner, part-owner, tenant, or sharecropper operating a farm; (3) the head of a family; (4) an individual not a member of a family; (5) a nonprofit organization exempted from taxation under section 235-9.

"Family" means two or more individuals living together in the same dwelling unit who are related to each other by blood, marriage, adoption, or legal guardianship.

"State agency" means an agency or instrumentality created by the State and includes, for purposes of this chapter, county governmental agencies.

"Displaced person" means *any person who is required to move from any real property on or after June 25, 1970,* as a result of the acquisition or imminence of acquisition of such real property, in whole or in part, by a state agency or who

Building Department and City Department of Housing and Community Development are "state agencies" as defined in HRS § 111-2 (1976). The City Building Department sent notices to correct to the DHCD, citing "substandard conditions" and directing the DHCD to demolish two of the subject buildings and to make repairs to the third subject building. In regard to the third structure, the DHCD unilaterally chose to demolish the building. The actions of the City Building Department and the DHCD constitute "a governmental program of . . . code enforcement activities." The appellants are thus "persons who are required to move from . . . real property after June 25, 1970 . . . as a result of . . . a governmental program of . . . code enforcement activities."

Since the appellants are "displaced persons," the appellee is required to offer relocation assistance to them prior to eviction. The trial court herein erred in granting summary judgment without first determining the adequacy of relocation assistance offered by the appellee to the appellants.[7]

---

moves from such real property as a result of the acquisition or imminence of acquisition by such state agency of other real property on which such person is conducting a business or farm operation. "Displaced person" also includes the foregoing movements from real property by any person *as a result of a governmental program of voluntary rehabilitation or building, zoning, and other similar code enforcement activities*. "Displaced person" as defined in this chapter shall not include a tenant upon or occupier of state land under a revocable permit which is issued or renewed on or after [June 7, 1974], provided that those persons who are issued revocable permits on State land which they had previously occupied as tenants or occupiers of private land which is subsequently acquired by the State, by virtue of which acquisition the revocable permits are issued immediately upon acquisition, shall be entitled to assistance as displaced persons upon displacement at the termination of the revocable permits.

"Business" means any lawful activity conducted (1) primarily for the purchase and resale, manufacture, processing or marketing of products, commodities, or any other personal property; (2) primarily for the sale of services to the public; or (3) by a nonprofit organization.

. . . .

(Emphasis added.)

[7] Appellants contend that the ruling of the federal Department of Housing and Urban Development (HUD), which upheld the DHCD's findings regarding the adequacy of the DHCD's relocation assistance program was arbitrary and capricious. The record does not reflect any proper evidence which would permit this court to consider appellants' contention.

### III. WHETHER APPELLEES' FAILURE TO GIVE APPELLANTS NOTICE AND A HEARING REGARDING DEMOLITION OF THE BUILDINGS WAS IN VIOLATION OF DUE PROCESS.

It is undisputed that the City Building Department's Housing Board of Appeals did not give notice or hold any hearing about building conditions at 139-143 and 155 North Beretania Street and 1189 River Street.

Appellants contend that appellee's failure to provide them with notice and a hearing regarding demolition of the subject buildings was in violation of their rights to procedural due process under the United States and State Constitutions, as well as under HRS § 53-60 (1976) and the Revised Ordinances of Honolulu (ROH) § 25-9.2 (1975 Cum. Supp.).

HRS § 53-60(a) (1976) provides that a county may cause the "repair, closing or demolition, or removal" of dwellings which are unfit for human habitation. HRS § 53-60(b)(2) and (b)(3)[8] require that a board of appeals created by the county

---

[8] HRS § 53-60(b) provides, in part:

(b) *Upon the adoption of an ordinance finding that dwelling conditions of the character described in subsection (a) hereof exist within a county, the council may adopt ordinances relating to the dwellings within the county which are unfit for human habitation. The ordinances shall include the following provisions except as otherwise provided by chapter 91:*

. . . .

(2) That whenever a petition is filed with the public officer by at least five residents of the county charging that any dwelling is unfit for human habitation or whenever it appears to the public officer (on his own motion) that any dwelling is unfit for human habitation, he shall, if his preliminary investigation discloses a basis for the charges, *issue and cause to be served upon* the owner, every mortgagee of record, and *all parties in interest in the dwelling (including persons in possession) a complaint stating the charges in that respect. Such complaint shall contain a notice that a hearing will be held before the board of appeals* at a place therein fixed not less than ten days nor more than thirty days after the serving of the complaint; that the owner, mortgagee, and *parties in interest shall be given the right to file an answer to the complaint and to appear in person or otherwise, and give testimony at the place and time fixed in the complaint;* and that the rules of evidence prevailing in courts of law or equity shall not be controlling in hearings before the board of appeals.
(3) That the board of appeals may administer oaths, affirmations, examine witnesses and receive evidence, and that if, after such *notice and hearing,* the board of appeals determines that the dwelling under consideration is unfit for

hold a hearing on the dwelling's fitness for human habitation, that a complaint containing notice of the hearing be served upon "all parties in interest in the dwelling (including persons in possession)", and that the parties in interest be given a right to file an answer to the complaint and to appear at the hearing.

ROH § 25-9.2(a)(1975 Cum. Supp.)[9] provides that when it appears to a building official, upon preliminary investigation, that a building is substandard, the official shall issue a complaint with notice of the charges to "every party in interest, including persons in possession."[10] ROH § 25-9.2(c) provides

---

human habitation it shall state in writing its findings of fact in support of the determination and shall issue and cause to be served upon the owner thereof an order which,

(A) If the repair, alteration, or improvement of the dwelling can be made at a reasonable cost in relation to the value of the dwelling (the ordinance of the county shall fix a certain percentage of the cost as being reasonable for the purpose), requires the owner, within the time specified in the order, to *repair, alter, or improve the dwelling* to render it fit for human habitation or to vacate and close the dwelling as a human habitation; or
(B) If the repair, alteration, or improvement of the dwelling cannot be made at a reasonable cost in relation to the value of the dwelling (the ordinance of the county shall fix a certain percentage of the cost as being reasonable for the purpose), requires the owner, within the time specified in the order, to *remove or demolish the dwelling*.

.   .   .   .

(Emphasis added.)

[9] We may consider ROH § 25-9.2 (1975 Cum. Supp.) because there was a certified copy of Ord. No. 4404, which amended ROH § 25-9.2, on file in circuit court. HRS § 622-13 (1976).

[10] ROH § 25-9.2(a) (1975 Cum. Supp.) provides:
(a) Complaint. Whenever it appears to the building official that a building or portion thereof is substandard or whenever a petition is filed with such official by at least five residents of the City and County of Honolulu charging that a building or portion thereof is substandard and a preliminary investigation by such official discloses a basis for such charge, such official shall issue a complaint, stating the charges with respect to such building or portion, and *cause it to be served upon* the owner of record, every mortgagee of record and *every party in interest, including persons in possession*.
*Such complaint shall contain a notice that a hearing will be held before the Housing Board of Appeals at a place and time therein fixed, which time shall be not less than 10 days nor more than 30 days after service of the complaint;* that the owner, mortgage or *party in interest may each file an answer to the complaint and*

that after service of the complaint, a hearing shall be held before the Housing Board of Appeals, which may order the building to be "vacated and repaired or rehabilitated" or "demolished and removed."[11]

Appellee contends that HRS § 53-60 (1976) and ROH § 25-9.2 (1975 Cum. Supp.) are inapplicable because HRS § 111-10 (1976)[12] mandates the supremacy of the federal regulations as contained in the HUD Relocation Handbook. The federal regulations are not within our purview, as they were not introduced in evidence pursuant to HRS § 622-13 (1976).

We conclude that appellants were entitled to notice and a hearing under HRS § 53-60 (1976) and ROH § 25-9.2 (1975 Cum. Supp.). The City Building Department's notices to correct indicate that it found the buildings to be substan-

---

*appear in person or otherwise at such hearing to give testimony;* and that the rules of evidence prevailing in courts of law or equity are not controlling in such hearing. (Emphasis added.)

[11] ROH § 25-9.2(c) (1975 Cum. Supp.) provides:

(c) Hearing and Orders. *After service of such complaint, a hearing shall be held before the Housing Board of Appeals.* After the hearing, the Board shall state its findings of fact, conclusions of law, decision and order in writing. If the Board finds that the building or portion of a building is substandard, it shall order such building or portion to be *vacated and repaired or rehabilitated* in such manner and in such respects as to render such building or portion not substandard and may require that such repairs or rehabilitation be commenced within 12 days and completed within 90 days after service of such order, or within such further time as the Board may allow. If the cost of such repairs or rehabilitation exceeds 75% of the cost of replacement of the entire building or portion, the Board shall order such building or portion *demolished and removed.* (Emphasis added.)

[12] HRS § 111-10 (1976) states:

Conflicts between state and federal requirements. If the funds for relocating any displaced person have been loaned or furnished, wholly or in part, by the United States, or any instrumentality thereof, under terms and provisions contrary to this chapter, the terms and provisions required by the United States, or any such instrumentality, shall govern and are made applicable, and the officer expending such funds shall conform to such requirements as the United States, or any such instrumentality, shall provide or require, any law or laws of the State to the contrary notwithstanding.

dard.[13] Appellants, as "persons in possession" are "parties in interest" under both the statute and the ordinance. The appellants' due process rights were violated herein.

*Lowell Chun-Hoon (King, Nakamura, Nakamura and Takahashi* of counsel; *Wayson Chow and Leanor Tamoria* on the briefs) for defendants-appellants.

*Edmund L. Lee, Jr.,* Deputy Corporation Counsel, for plaintiff-appellee.

---

[13] Inasmuch as the premises herein were used, designed and intended to be used for human habitation, we reject appellee's contention that the City Building Department's order to demolish the premises herein means that the premises are no longer "buildings" as used in HRS § 53-60 (1976) and ROH § 25-9.2 (1975 Cum. Supp.).