James **HETHERTON** and Carol Hetherton, his wife, Plaintiffs,

v.

**SEARS, ROEBUCK & COMPANY,** Defendant.

Civ. A. No. 77–84.

United States District Court, D. Delaware.

June 17, 1980.

Carl A. Agostini of Trzuskowski, Kipp, Kelleher & Pearce, P. A., Wilmington, Del., for plaintiffs.

Howard M. Berg of Berg, Heckler & Cattie, P. A., Wilmington, Del., Robert F. Maxwell and Arnold J. Bennett, St. Davids, Pa., of counsel, for defendant.

## OPINION

LATCHUM, Chief Judge.

Plaintiffs in this diversity action, James Hetherton and Carol, his wife, seek damages for personal injuries suffered by Mr. Hetherton as a result of a shooting incident in which he was shot by an assailant using a .22 caliber rifle and ammunition which had been purchased by the assailant at defendant's (Sears, Roebuck & Company) store in Wilmington, Delaware. Sears has moved for summary judgment on the ground that plaintiffs' sole remaining theory of liability is premised upon Sears' failure to comply with a state statutory requirement which is allegedly void because it violates the Equal Protection Clause of the Fourteenth Amendment.

The following facts underlying this action were found by Judge Wright in his opinion granting Sears' first motion for summary judgment, *Hetherton v. Sears, Roebuck and Co.*, 445 F.Supp. 294 (D.Del.1978), *rev'd in part and aff'd in part*, 593 F.2d 526 (C.A.3, 1979):

James Hetherton, a Wilmington Police Officer, was shot on April 9, 1976 while he was working at an extra job as a guard. Hetherton's assailant, one Lloyd C. Fullman, Jr., shot Hetherton with a .22 caliber rifle. Both the rifle and ammunition were purchased by Fullman at a Sears, Roebuck & Company ("Sears") department store in Wilmington, Delaware on February 25, 1976. At the time Fullman purchased the rifle and ammunition, a Sears salesman, John Loughren, requested Fullman's Delaware driver's license for identification purposes and asked Fullman to fill out a federal Firearms Transaction Record (Form 4473). Although Fullman had been convicted of two felonies under Delaware law prior to the time of the sale, he indicated on Form 4473 that he had never been convicted of a felony.

Plaintiffs initially advanced three theories as the basis for establishing liability in this action. They argued that Sears was negligent in the following three respects which proximately caused plaintiffs' damages:

(1) Sears failed to require at least two freeholders who were residents of New Castle County to positively identify Fullman before selling him a "deadly weapon", in violation of 24 *Del.C.* § 904; (2) Sears sold a deadly weapon to a convicted felon without having "reasonable cause to believe" that the sale was not in violation of state law, as required under the Gun Control Act of 1968, 18 *U.S.C.* § 922(b)(2); (3) Sears was negligent under common law because it failed to use reasonable caution in attempting to ascertain whether Fullman was prohibited from possessing a deadly weapon under 11 *Del.C.* § 1448.

Judge Wright granted summary judgment in favor of Sears on all three theories. He was affirmed by the Court of Appeals as to the second and third theories but was reversed on the first theory—liability under 24 *Del.C.* § 904. Consequently, that is the sole remaining theory under which Sears could be held liable to the plaintiffs.

At the time that Fullman purchased the rifle and ammunition, 24 *Del.C.* § 904 [1] provided:

Any person desiring to engage in the business described in this chapter shall keep and maintain in his place of business at all times a book which shall be furnished him by the State Tax Department. In such book he shall enter the date of the sale, the name and address of the person purchasing any deadly weapon, the number and kind of deadly weapon so purchased, the color of the person so purchasing the same, the apparent age of the purchaser, and the names and addresses of at least two freeholders resident in the county wherein the sale is made, who shall positively identify the purchaser before the sale can be made. No clerk, employee or other person associated with the seller shall act as one of the identify-

---

1. The statute was subsequently amended and now requires identification by "at least 2 residents of the State" rather than two freeholders. 61 Del.Laws, c. 406, effective June 30, 1978.

ing freeholders. The book shall at all times be open for inspection by any judge, justice of the peace, police officer, constable or other peace officer of this state.

Both the Court of Appeals and Judge Wright found that § 904 was enacted for the safety of others including those in Mr. Hetherton's position. Consequently, Sears' violation of that statute would amount to negligence *per se*. Judge Wright concluded, however, that the statute's requirement of identification by two freeholders was solely for the purpose of accurate identification and that since Sears had, in fact, verified Fullman's identity correctly by means of his Delaware driver's license which carried his photograph,[2] there could be no "but for" causation. The Court of Appeals disagreed, finding that the purpose of the identification by two freeholder requirement was both to positively identify the purchaser and to make the purchase of a firearm more burdensome and even in many cases perhaps impossible for ex-convicts such as Fullman. Thus, the Court of Appeals concluded that Sears' failure to require identification by two freeholders could have caused Mr. Hetherton's injuries and that the question of causation should be submitted to the jury. The case was therefore remanded to this Court for further proceedings.

Sears now contends that it had no duty to require Fullman to produce two freeholders for identification because the statutory provision requiring such identification was unconstitutional. Specifically, Sears contends that the requirement violated the Equal Protection Clause because it discriminated on the basis of wealth or property-holding status. Sears points to two groups against whom the discrimination applied. It denied the class of people not possessing freehold estates the opportunity to participate in the enforcement of the statute and it denied the class of people who did not know any freeholders the privilege of purchasing arms. Sears finally argues that there was no rational basis for the statutory discrimination and that the statute was therefore void under the Fourteenth Amendment under any test.

Plaintiffs first contend that Sears has no standing to challenge the constitutionality of the statute because, if the statute violated any constitutional rights, those rights were held by others. Secondly, plaintiffs argue that even if Sears has standing to challenge the constitutionality, the statute passed muster under the Fourteenth Amendment. They argue that statutes which make distinctions on the basis of property ownership or wealth need only bear a minimally rational relationship to the achievement of some legitimate state interest and that the requirement that freeholders identify the purchasers of arms served several such interests.

The Court has thus been presented with questions in two of the most volatile and confused areas of Constitutional law—the law of *jus tertii* and the law of the application of the Equal Protection clause to wealth and property based distinctions. Before venturing into this legal morass, however, it is necessary to identify both the putative rights at stake here and the putative rights-holders. If any rights were violated by 24 *Del.C.* § 904, those rights were held by a group composed of people not possessing freehold estates.[3] The putative

---

**2.** Since 1969 all Delaware driver's licenses must display a current photograph of the licensed driver. 21 *Del.C.* § 2715(b); 57 Del. Laws, c. 218, effective July 8, 1969.

**3.** Sears has also claimed that the statute discriminated against a class composed of those who were not acquainted with any freeholders. Because the Court finds that the statute was unconstitutional because it discriminated arbitrarily against non-freeholders, it does not reach the question of whether those unacquainted with any freeholder could be considered a dis-

crete class of individuals for purposes of review under the Equal Protection Clause. *See, e. g., San Antonio Ind. School Dist. v. Rodriguez,* 411 U.S. 1, 17–29, 93 S.Ct. 1278, 1288–94, 36 L.Ed.2d 16 (1973).

The Court will also not address Sears' contention that the statute discriminated on the basis of wealth. Although property based discrimination has often been treated as being the same as wealth based discrimination and although wealth is somewhat correlated with real property ownership, this Court concludes that

right which 24 *Del.C.* § 904 violated was the non-freeholders' right not to be arbitrarily excluded from the exercise of any right, privilege, or duty because of their lack of real property. The offending statute would have extended to freeholders the privilege or duty of assuring that firearms were kept "out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price to pay in danger to us to allow," *Hetherton v. Sears, Roebuck & Co.,* 593 F.2d 526, 530 (C.A.3, 1979), *quoting Huddleston v. United States,* 415 U.S. 814, 825, 94 S.Ct. 1262, 1269, 39 L.Ed.2d 782 (1974), while it would have denied non-freeholders this opportunity to participate in the protection of their homes, family and community.[4]

## I. Sears has standing to challenge the constitutionality of 24 Del.C. § 904.

The Court finds that if 24 *Del.C.* § 904 did violate the Equal Protection rights of non-freeholders, Sears has standing to raise that issue in the present proceeding.

■■■ Limitations on a party's right to raise the rights of third parties are imposed both by the Constitution and by prudential rules of self-restraint. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Note: Standing to Assert Constitutional *Jus Tertii,* 88 Harv.L.Rev. 423 (1974). The constitutional limitations clearly do not apply to Sears in this case. Article III requires only that a litigant show that a challenged law or action is causing him "injury in fact," so as to establish "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues

upon which th[is] court so largely depends for illumination of difficult constitutional questions." *Orr v. Orr,* 440 U.S. 268, 273, 99 S.Ct. 1102, 1109, 59 L.Ed.2d 306 (1979), *quoting Linda R. S. v. Richard D.,* 410 U.S. 614, 616, 93 S.Ct. 1146, 1147, 35 L.Ed.2d 536 (1973), *quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Craig v. Boren, supra.* The statutory requirement which Sears is challenging here created for Sears a legal duty to require anyone purchasing a firearm from Sears to produce two freeholders who could identify the purchaser. Sears' failure to perform this duty is presently exposing it to a very large potential liability and could lead to criminal prosecution.[5] Thus, the statute is clearly causing Sears injury in fact and Sears has a weighty personal interest in demonstrating that the law was unconstitutional.

■■■ The Court also concludes that Sears' right to assert *jus tertii* ought not be barred by any prudential considerations. As a prudential consideration, courts have fashioned a rule which would prohibit a party from attacking a statute on the ground that it violates rights held solely by others. The rule is supported by the rationale that in most cases the parties whose rights have actually been violated will be in the best position to defend those rights and will be their best advocates. In light of this underlying rationale, an exception to the rule has been created which would allow a litigant to assert the rights of third parties where it would be difficult or impossible for the rightholders themselves to protect their rights. *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029,

---

the two types of discrimination are in fact different. First, the classes affected are different. Urban areas are very likely to contain wealthy leaseholders while many rural areas will contain poverty-stricken dirt farmers owning a small plot of land. Secondly, the reasons for imposing a wealth based distinction would be quite different from those which might warrant a property based distinction. 24 *Del.C.* § 904, on its face, discriminated on the basis of property ownership, not wealth.

4. Thus, the right to bear arms is not implicated in this case. There is no question that Delaware can regulate and even ban the sale of firearms. However, it cannot regulate them in a manner which is constitutionally impermissible.

5. 24 *Del.C.* § 905 provides that a person violating 24 *Del.C.* § 904 could receive a fine of up to $100, a prison sentence of not more than 6 months, or both.

31 L.Ed.2d 349 (1972); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The situation presented by the present case falls squarely within that exception. A litigant in Sears' position would be the only one who would conceivably have the incentive and the ability to protect the rights of the non-freeholders from the disqualification imposed by 24 *Del.C.* § 904. While the statute did discriminate against non-freeholders, the interest which is at stake is not of the kind that realistically could be expected to induce a rightholder to undertake the time and expense which litigation entails. Indeed, in most cases, the rightholders would have been unaware of the statutory discrimination. Thus, if the statute did violate the Equal Protection rights of non-freeholders, Sears is the party that will best be able to assert and protect those rights.

II. *The requirement contained in 24 Del.C. § 904 that a purchaser of a firearm be identified by two freeholders before any sale is constitutionally infirm because it violates the Equal Protection Clause of the Fourteenth Amendment.*

The Court will now turn to the question of whether the statute violated any rights of non-freeholders by subjecting them to a classification which violates the Equal Protection Clause. As noted above, the statute did make a classification of Delaware residents, dividing them into holders of freehold estates, who could act as identifying parties, and those who do not hold freehold estates, who were disqualified from fulfilling that role.[6] Because the statute made a classification, the Equal Protection Clause requires that some justification be shown for the classification.

■ The nature of the justification that is required by the Equal Protection Clause, however, varies according to the nature of the classification and the interests affected by that classification. Under the traditional equal protection doctrine, a two-tier standard of review prevails. Under the traditional analysis, if the statute makes a "suspect classification," such as one based upon race, *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed.2d 664 (1880), national origin, *Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), or alienage, *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), or if the statute affects a "fundamental right," such as First Amendment Rights or other rights explicitly guaranteed by the Constitution, *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), the right to travel, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and various privacy rights, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), among others, the justifications for the statute will be strictly scrutinized and almost invariably struck down. *See*, Tribe, *American Constitutional Law*, § 16 (1978); Gunther, "Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection," 86 Harv.L.Rev. 1 (1972). Under the traditional doctrine, all other classifications will be reviewed under the standard of minimum rationality and will be upheld if they further any conceivable legitimate state objective. *Williamson v. Lee Optical*, 348 U.S.

---

**6.** The legislative history of the Act and Delaware law at the time of the Act's passage show a clear intention to limit the class of people who could identify firearms purchasers to property owners. The first Act regulating firearms was passed in 1911. That Act lacked any reference to freeholders and required only positive identification, without specifying the means of identification. 26 Del.Laws, c. 15 (1911). The Act was amended in 1919 to require that identification be by "2 freeholders." 30 Del.Laws, c. 28 (1919). That part of the law was unchanged at the time of the Sears' sale involved in this litigation. In 1978, the Act was again amended to require only identification by two "residents of the State." 61 Del.Laws, c. 406 (1978). Thus, the legislature clearly indicated its understanding that the term "freeholder" differed significantly from the term "resident." Indeed, the meaning of the term in Delaware, as elsewhere, encompasses only those persons possessing freehold property interests. Where Acts in Delaware require an action by freeholders, an action by non-property holders is clearly insufficient. *In re Blackburn*, 1 Boyce 334, 24 Del. 334, 76 A. 366 (Del.Ct.Gen.Sess.1910).

483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). The strict dichotomy of the traditional test, however, has broken down in recent years, and it is now widely recognized that varying intermediate standards of review have been applied, *sub silentio*, in cases involving certain "quasi-suspect" classifications and "important" but not fundamental rights. *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979) (sex); *Craig v. Boren, supra* (sex); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (illegitimacy); *San Antonio Ind. School Dist. v. Rodriguez, supra* (wealth); *James v. Valtierra*, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971) (wealth); *Medora v. Colautti*, 602 F.2d 1149 (C.A.3, 1979) (welfare an important interest). *See, Mathews v. Lucas*, 427 U.S. 495, 516, 96 S.Ct. 2755, 2767, 49 L.Ed.2d 651 (1976) (Stevens, J., joined by Brennan and Marshall, JJ., dissenting); *Hollenbaugh v. Carnegie Free Library*, 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978) (Marshall, J., dissenting from denial of *certiorari*); Tribe, *Id.* § 6; Gunther, *op. cit.*

■■ Classifications based upon property ownership fall into this nether category. In *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) the Supreme Court found that the privilege of serving on a schoolboard could not be restricted to freeholders. The court found no fundamental interest was implicated by the restriction and, without specifically finding that classifications based upon property ownership were "suspect", concluded that the classification was wholly arbitrary and unrelated to any legitimate state objective. *Walker v. Yucht*, 352 F.Supp. 85, 90 (D.Del. 1972). *See also, Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975); *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). In fact, restrictions based upon property ownership have been upheld in only one situation. The Supreme Court held that the right to vote in special interest elections, where the body elected serves a special interest related directly to the land and is financed by fees imposed on the land, may be conditioned upon property ownership. *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973). Since the restrictions upheld in those two cases impinged upon the fundamental right to vote, *Harper v. Virginia Board of Elections*, 383 U.S. 663, 670, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966), the justification for the restriction must have been found to meet the compelling state interest test in any case. However, this Court finds it unnecessary to decide whether it should review the present property-based classification under the compelling state interest standard, the minimal rationality standard, or some intermediate test, because it concludes that the freeholder identification requirement of 24 *Del.C.* § 904 is not rationally related to any conceivable legitimate state interest. Hence, it is unconstitutional under all three standards.

The only two conceivable interests which the freeholder identification requirement might serve were focused upon as noted earlier by the Court of Appeals. The Court there held that the requirement served both as a means of positive identification and as a means of deterring those who are not eligible to buy firearms, such as felons, from doing so. *Hetherton v. Sears, Roebuck & Co., supra* at 530–531. While these two objectives are certainly legitimate, the requirement that the identification be performed exclusively by freeholders bears absolutely no rational relationship to their achievement in these modern times.

There is certainly no indication that holders of real property would offer a more positive or reliable means of identification of a firearm purchaser than would nonfreeholders or even the driver's license carrying the purchaser's photograph that was actually tendered to Sears in this case. Similarly, there is no reason to believe that freeholders would be more likely than nonfreeholders to deter the sale of firearms to

felons or members of those classes who are ineligible to purchase them.

If the identification requirement does deter such sales to felons, it could do so in one of two ways. First, it could make it more difficult for felons to purchase firearms because people are unlikely to agree to identify either an unknown person or one they know to be a felon and thus it would be difficult for a felon to find two people who would identify him. However, there is no reason to believe that freeholders are more likely to refuse to identify a firearm purchaser who is either a stranger or felon than are non-freeholders.

Secondly, the identification requirement could also make it more difficult for felons to purchase firearms because where people are asked by felons or strangers to identify them, they may refuse and then report that fact to authorities. There is absolutely no reason to believe that non-freeholders are less likely than freeholders to report to the authorities that a felon or other suspicious person is seeking to purchase a firearm. In short, the Court finds no reason to believe that non-freeholders will be less willing than freeholders to attempt to protect their communities by helping to prevent those who should not possess firearms from purchasing them.

Indeed, the Court takes note of the fact that many of this Court's personnel, including judges, are leaseholders and finds the suggestion that they would be less likely or able to carry out the purposes of the identification requirement of § 904 than a freeholder, who himself may be "a criminal, drug addict, insane, or a child," to be ridiculous. While Delaware may regulate, otherwise deter, and even ban the sale of firearms, it may not adopt means of accomplishing that end in a way that.is constitutionally impermissible. The Court concludes that the former freeholder identification requirement of § 904 amounts to an irrational classification in violation of the Equal Protection Clause.

The Court, having found the two freeholder requirement unconstitutional,

also concludes that Sears owed no duty under that statute to require the identification of two freeholders in addition to the positive identification provided by the driver's license. Without such a legal duty, Sears cannot be held liable to the plaintiffs for injuries sustained by Mr. Hetherton. Consequently, summary judgment must be entered in favor of Sears.