RUTH O. HULSMAN, Plaintiff-Appellant, *v.* HEMMETER DEVELOPMENT CORP.; THE THOM COMPANY, LTD., dba KING SPORTING GOODS; STATE OF HAWAII, Defendants-Appellees, and JOHN DOES I-V; JOHN DOE CORPORATIONS I-V and JOHN ROE PARTNERSHIPS I-V, Defendants

NO. 6530

(CIVIL NO. 43154)

JUNE 30, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR, ASSIGNED TEMPORARILY

OPINION OF THE COURT BY OGATA, J.

This is an appeal by plaintiff-appellant, Ruth O. Hulsman (hereinafter "appellant"), from orders granting summary judgment, entered by the First Circuit Court, in favor of defendants-appellees, State of Hawaii (hereinafter "State"), the Thom Company, Ltd., doing business as King Sporting Goods (hereinafter "Thom Company"), and defendant Hemmeter Development Corporation.[1] Given the record submitted to us along with the applicable law, we affirm the judgment of the circuit court.

On June 19, 1973, Robert Miller (hereinafter "Miller"), pled guilty to criminal property damage in the second degree in the First Circuit Court. As a consequence, a pre-sentence investigation was

---

[1] Hemmeter Development Corporation, doing business as the Waikiki Biltmore Hotel, was not made a party to this appeal. Appellant is not contesting the granting of summary judgment in favor of Hemmeter. *Cf.* Solis v. Civic Cir. Site Development Co., 385 So.2d 1229 (La. Ct. App. 1980) (hotel owner not liable for injuries sustained by police from sniper held up in hotel).

ordered and was conducted by Filiberto Hernandez, a State proba-
tion officer. On or about July 17, 1973, Miller was interviewed at
Hernandez's office where Hernandez was informed by Miller that
he possessed a .22 caliber rifle which was enclosed in a cardboard
box. Miller left the interview with the cardboard box. Thereafter, on
July 18, 1973, while sitting in front of her Waikiki apartment build-
ing, appellant was seriously wounded from a rifle shot fired by
Robert Miller. Miller had purchased the rifle from the Thom Com-
pany on June 28, 1973.

A complaint was filed on September 25, 1974, which was subse-
quently amended on July 15, 1975, in the First Circuit Court. In the
amended complaint, appellant alleged that because Miller fired the
shot from a room in Hemmeter's hotel which injured appellant,
Hemmeter's negligence was the direct and proximate cause of ap-
pellant's injuries. Appellant further alleged that appellee Thom
Company knew or should have known that Miller was not of sound
mind and should not have sold Miller the gun; and as a result, the
Thom Company was negligent and the direct and proximate cause
of appellant's injuries. Appellant's final allegation was that the State
of Hawaii, by its employee, probation officer Hernandez, was negli-
gent in failing to seize the firearm in Miller's possession and in taking
Miller into custody. As such, the negligence of the State, by its
employee, was the direct and proximate cause of appellant's injuries.

On July 26, 1976, Thom Company moved for summary judg-
ment which was denied by the First Circuit Court.[2] Subsequently, on
December 23, 1976, the State of Hawaii moved for summary judg-
ment. Thereafter, on December 27, 1976, Hemmeter filed its mo-
tion for summary judgment and Thom Company filed a motion for
reconsideration of its denial of summary judgment. After a hearing
on the matter on January 27, 1977, the First Circuit Court orally
granted summary judgment in favor of all defendants and written
orders followed thereafter. On January 21, 1977, appellant filed a
motion for reconsideration which was denied on February 14, 1977.
Appellant now appeals the decisions of the circuit court.

---

[2] Judge Norito Kawakami denied Thom's initial motion for summary judgment.
Judge Arthur Fong subsequently granted Thom's motion for reconsideration and
summary judgment was granted.

The issue presented for our consideration is whether summary judgment was properly granted in this case. However, in order to properly consider this issue, we must examine whether a state-employed probation officer is entitled to immunity, and in what instances may liability be imposed on a seller of firearms.

## I.

The standard whereby disposition of the case by summary judgment is proper is where, from the record, there is no genuine issue as to any material fact and movants clearly demonstrate they should prevail as a matter of law. Rule 56(c), H.R.C.P.; *Molokai Homesteaders Coop. Ass'n v. Cobb*, 63 Haw. 453, 629 P.2d 1134 (1981); *City & County v. Toyama*, 61 Haw. 156, 598 P.2d 168 (1979); *Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *Hunt v. Chang*, 60 Haw 608, 594 P.2d 118 (1979).[3] Inferences to be drawn from the record must be viewed in the light most favorable to the party opposing the motion. *Lau v. Bautista, supra; Hunt v. Chang, supra.*

A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Lau v. Bautista, supra; City & County v. Toyama, supra; Hunt v. Chang, supra.*

Our review of the record reveals that most of the relevant facts are undisputed and none of the disputed facts were material to the legal issues presented therein. We now consider whether appellee State of Hawaii and appellee Thom Company are entitled to judgment as a matter of law.

## II.

Appellant asserts that the State's liability is premised on the theory of *respondeat superior*. Under this theory, the employer is held accountable and liable for the negligent acts of its employees. *Orso v. City & County*, 56 Haw. 241, 248, 534 P.2d 489, 494 (1975); *Lucas v.*

---

[3] In cases of public importance, we recognize that summary judgment should be sparingly granted and never on an indefinite factual foundation. Molokai Homesteaders Coop. Ass'n v. Cobb, *supra;* Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974); State v. Zimring, 52 Haw. 472, 479 P.2d 202 (1970).

*Liggett & Myers Tobacco Co.,* 50 Haw. 477, 442 P.2d 460 (1968); *Lane v. Yamamoto,* 2 Haw. App. 176, 628 P.2d 634 (1981).[4]

However, under this same theory, if the employee has immunity from suit, it follows that the employer would also be immune. *State ex. rel. Dept. of Justice v. District Court of the Eighth Judicial Dist.,* 172 Mont. 88, 560 P.2d 1328 (1976); *Board of Commissioners of Delaware County v. Briggs,* 167 Ind. App. 96, 337 N.E.2d 852 (1975); *Creelman v. Svenning,* 67 Wash.2d 882, 410 P.2d 606 (1966). The reasoning which justifies this rule is based primarily on public policy. As the court stated in *Creelman v. Svenning, supra* at 885, 410 P.2d at 608:

> The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and county for acts of judicial and quasi-judicial officers in performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed.
>
> If the prosecutor must weigh the possibilities of precipitating tort litigation involving the county and the state against his action in any criminal case, his freedom and independence in proceeding with criminal prosecutions will be at an end.
>
> The public advantage of free, independent, and untrammeled action by the prosecuting attorney outweighs the disadvantage to the private citizen in the rare instance where he might otherwise have an action against both the county and state, either or both.

Moreover, the Indiana court in *Board of Commissioners of Delaware County v. Briggs, supra,* recognized that in light of established precedents, to hold the State liable where its employees are not liable is a dangerous precedent.

Although a contrary result was reached in *Calhoun v. City of Providence,* 390 A.2d 350 (R.I. 1978), using a public policy analysis, the *Calhoun* court held that since a county clerk who was responsible for issuing a capias, a common law writ of arrest, was not immune from suit, the state was not also immune. The Rhode Island court

---

[4] In *Orso* and *Lane,* the City and County of Honolulu was liable for the tortious acts of its employees, the prosecuting attorney. In *Lucas,* a company was held liable for the acts of its salesperson.

recognized the public policy considerations of affording employees the immunity given to their superiors and stated:

> Certain types of activities, as for example judicial decision-making and the enforcement of the criminal laws by the attorney general, must be engaged in by these officials freely, independently, and untrammeled by the possibilities of personal liability.

> \* \* \* \*

> If a judge must weigh each decision against the possibility that he will precipitate tort litigation against the state, his judicial freedom and independence are, nevertheless, affected. The same is true with regard to the conduct of other immune officials whose freedom from liability in particular cases is premised upon compelling public policy grounds.

390 A.2d at 356.

Thus, the questions becomes is a probation officer immune from suit for tortious conduct?

Pursuant to statute and rules[5] the probation officer collects and prepares data for the court in a presentence report on persons awaiting sentencing. *See* HRS § 806-73; *Judiciary Manual of Policies and Procedures.* Thus, a probation officer serves as an arm of the court and performs "quasi-judicial" functions. We hold that a probation officer i. entitled to the absolute immunity afforded to the judges whom they serve in the preparation and presentation of a pre-sentence report.

---

[5] HRS § 806-73 establishes the relationship of a probation officer to the court. That statute reads:

> A probation officer shall investigate any case referred to him for investigation by the court in which he is serving and report thereon to the court. The probation officer shall instruct each defendant placed on probation under his supervision regarding the terms and conditions of his probation. He shall keep informed concerning the conduct and condition of the defendant and shall report thereon to the court and shall use all suitable methods to aid the defendant and to bring about improvement in his conduct and condition. The probation officer shall keep such records and perform such other duties as the court may direct. Every probation officer shall, within the scope of his duties, have the powers of a police officer.

The Judiciary's Manual of Policies and Procedures describes the role a probation officer plays in preparation of a pre-sentence report:

> 1) to aid the Court in determining the appropriate sentence;
> 2) to assist the penal institutions in their classification and treatment programs and also in their release planning;

Further support for our position is found in an analogous situation wherein we held that court-appointed psychiatrists were entitled to absolute judicial immunity, even if negligent. *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173 (1981). In *Seibel*, this Court found that the immunity afforded to judges was equally applicable to court-appointed psychiatrists in that the psychiatrists performed their duties as arms of the court. We stated that such immunity was necessary to insure that as arms of the court, court officials have the freedom and independence to act without apprehension of possible adverse consequences. Moreover, it would be unfair to spare the judge who would be immune while imposing liability on the court-appointed official.

The rationale underlying our decision in *Seibel v. Kemble, supra,* is equally applicable in the instant case. A probation officer in the preparation, investigation and presentation of a pre-sentence report provides an important service to the court. As such, in this capacity, a probation officer is entitled to absolute judicial immunity in the performance of his duties.

Other courts have recognized that a probation officer in preparing and submitting a pre-sentence report in a criminal case is performing a "quasi-judicial" function and is thus entitled to the immunity accorded judges. *Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970); *Harmon v. Superior Court*, 329 F.2d 154 (9th Cir. 1964); *Woolridge v. Commonwealth of Virginia*, 453 F. Supp. 1333 (E.D. Va. 1978); *Friedman v. Younger*, 282 F. Supp. 710 (D. Cal. 1968).

In *Burkes v. Callion, supra,* the appellant brought a civil rights damage action against a probation officer for alleged false statements and material omissions made in his report to the court. The Ninth Circuit held that the probation officer in preparing and submitting a probation report performed a "quasi-judicial" function

---

3) to furnish the Board of Paroles and Pardons with information pertinent to its consideration of parole;

4) to aid the probation/parole officer in his rehabilitative efforts during probation and parole supervision; and

5) to serve as a source of pertinent information for systematic research.

\* \* \* \*

The probation officer has the important task of gathering information about the defendant; evaluating, assimilating, and interpreting the data; and presenting them in a logically organized, readable, objective report.

and is entitled to the same immunity accorded to judges for acts done by them in the exercise of their judicial functions.

Similarly in *Woolridge v. Commonwealth of Virginia, supra,* pursuant to court order, a probation officer was required to submit to the court an order concerning plaintiff's adoption. The court held that the probation officer was absolutely immuned because the actions taken were pursuant to a valid court directive.

The record shows that Hernandez was in the process of preparing a pre-sentence report for the First Circuit Court on Robert Miller when the incident in question occurred. One of the duties in preparing a pre-sentence report is to interview the defendant. Hernandez performed a function integral to the judicial process and was acting as an arm of the court. Thus, Hernandez's alleged tortious failure to take the gun away from Miller is protected by the absolute immunity afforded to judges.

Since a probation officer is entitled to absolute judicial immunity in the preparation, investigation and submission of a pre-sentece report, accordingly, we hold that the State of Hawaii, as the employer of probation officer Hernandez, is immune from liability for the alleged negligence of its employees based on the doctrine of *respondeat superior* and overriding public policy considerations. *State ex. rel. Dept. of Justice v. Dist. Court of Eighth Judicial District, supra; Board of Commissioners of Delaware County v. Briggs, supra; Creelman v. Svenning, supra; Seibel v. Kemble, supra.*

## III.

A negligence action, whether based on a statutory violation or on common law requires the existence of a duty owed by the defendant to the plaintiff. *Namauu v. City & County,* 62 Haw. 358, 614 P.2d 943 (1980); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980). Thus, appellant argues that federal and state law along with common law impose a duty of care on appellee Thom, the breach of which gives rise to an actionable claim.

Appellant asserts that HRS § 134-9 imposes a duty on the seller of a firearm not to sell such an instrument to a person who is mentally ill. HRS § 134-9 reads:

> In an exceptional case, when the applicant shows reason to fear injury to his person or property, the respective chiefs of

police may grant a license to a citizen of the United States or a duly accredited official representative of a foreign nation, of the age of twenty years or more, to carry concealed on his person within the county where the license is granted, a pistol or revolver and ammunition therefor; or where the urgency of the need has been sufficiently indicated to the respective chiefs of police, they may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty years or more, who is engaged in the protection of life and property and not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry unconcealed on his person within the county where the license is granted, a pistol or revolver. Unless renewed, the license shall automatically become void at the expiration of one year from date of issue. No license shall be issued unless it appears that the applicant is a suitable person to be so licensed, and in no event to a person who is prohibited under section 134-7 from the ownership or possession of a firearm, or a person adjudged insane or appearing to be mentally deranged. No person shall carry concealed or unconcealed on his person a pistol or revolver without being licensed so to do under this section or in compliance with section 134-6.

For each license there shall be charged a fee of $10, which shall be deposited in the treasury of the county in which the license is granted.

Any person violating this section shall be imprisoned for a term of not less than two years nor more than five years, without probation.

We must consider this statute in light of the entire statutory scheme which regulates the sale of firearms in this State.

This statute makes it a criminal offense for a person, including those prohibited under HRS § 134-7, to possess a firearm without a license or permit.[6] However, by its terms, the statute does not impose a duty on the seller of a firearm in the sale to a mentally deranged person or one who is adjudged insane. The underlying legislative

---

[6] Act 239, S.L.H. 1981, amended HRS § 134-3 which previously exempted rifles and shotguns with barrel lengths over 18 inches from the permit requirement. Now permits are mandatory in the purchase of any type of firearm. At the time of the incident, registration or procurement of a license was unnecessary due to the exemption.

history does not manifest an intent on the part of the legislature to impose a duty of care on the seller of a firearm through the statute. *See* H. Stand. Comm. Rep. Nos. 894 & 931, *reprinted in* 1971 House Journal, p. 1083 & 1102; S. Stand. Comm. Rep. No. 524, *reprinted in* 1971 Senate Journal, pp. 1036-37; S. Stand. Comm. Rep. No. 558, *reprinted in* 1961 Senate Journal, p. 874; H. Stand. Comm. Rep. No. 89, *reprinted in* 1933 House Journal, p. 427-28. Thus, a violation of this statutes does not impose a duty on the Thom Company from which an actionable claim can be maintained.

Appellant next urges that violations of federal statutes impose a duty on the seller of a firearm not to sell firearms to one who is mentally ill.

This federal legislation[7] attempts to keep firearms out of the hands of those not legally entitled to possess them, *Huddleston v. United States,* 415 U.S. 814 (1974), and curb misuse by regulating sales through mail-order common carrier sales and to out-of-state non-residents. *Olson v. Ratzel,* 89 Wis.2d 227, 278 N.W.2d 238 (1979).

Our reading of the statute and its extensive legislative history does not reveal an intent to create civil liability for injuries sustained in firearms misuse. *Decker v. Gibson Products Co.,* 505 F. Supp. 34 (M.D. Ga. 1980); *Hetherton v. Sears, Roebuck Co.,* 445 F. Supp. 294 (D. Del. 1978), *aff'd in part, rev'd in part,* 593 F.2d 526 (3rd Cir. 1979), *aff'd on remand,* 493 F. Supp. 82 (D. Del. 1980), *aff'd,* 652 F.2d 1152 (3rd Cir. 1981); *Olson v. Ratzel, supra.*

The court in *Decker v. Gibson Products Co., supra,* determined that Congress did not intend to vest in victims injured by firearms obtained in violation of 18 U.S.C. § 922(d) a federal action for damages. The court noted at p. 36:

[T]here is no indication in the legislative history of § 922 which suggests a congressional intention to vest in those victims injured by firearms obtained in violation of § 922 a federal right to damages. A careful reading of the legislative history suggests that Congress intended the section to thwart the unlawful disposition of firearms at its inception rather than provide retrospective, remedial relief. This is evidenced by the legislative history's

---

[7] 18 U.S.C. § 922 and the regulation promulgated pursuant thereto. 27 C.F.R. §§ 124(c) & 178.

emphasis on increased law enforcement assistance and by the desire of Congress to afford relief to the Nation, rather than its injured victims.

We find that the federal statutes regulating firearm sales did not create a duty on a seller in a negligence action nor did it create a private right of action for damages.

Finally, appellant argues that appellee Thom Company is also liable under a theory of common law negligence.

An individual is minimally held to a standard of ordinary care in the conduct of all activities. *Olson v. Ratzel, supra.* Accordingly, a seller of firearms is obligated to exercise ordinary care in the sale of a firearm. *Hulsebosch v. Ramsey,* 435 S.W.2d 161 (Tex. Civ. App. 1968).

However, the concept of foreseeability is a limitation on the right to recover on an actionable claim. A duty of care is owed by a defendant only to those "who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Ajirogi v. State,* 59 Haw. 515, 522, 583 P.2d 980, 985 (1978); *Rodrigues v. State,* 52 Haw. 156, 174, 472 P.2d 509, 521 (1970). Foreseeability is a question of law that this court can competently determine. *Ajirogi v. State, supra,* at 527, 583 P.2d at 988; *Kelley v. Kokua Sales & Supply,* 56 Haw. 204, 532 P.2d 673 (1975).

The question of whether a retail seller, exercising ordinary care, should have anticipated or known that the buyer would misuse the firearm, causing injury to another has been considered by other courts. *See Decker v. Gibson Products Co., supra; Hulsebosch v. Ramsey, supra; Robinson v. Howard Bros. of Jackson, Inc.,* 372 So.2d 1074 (Miss. 1979); *Willigan v. Sears, Roebuck Co.,* 33 App. Div. 2d 1033, 308 N.Y.S.2d 74 (1970), *aff'd,* 28 N.Y.2d 680, 269 N.E.2d 399, 320 N.Y.S.2d 737 (1971).

For example, in *Hulsebosch v. Ramsey, supra,* the court held that summary judgment was properly granted and that the seller of a rifle was not liable to third parties for injuries sustained. The court stated:

> We have carefully considered the undisputed facts of this case in relation to the summary judgment granted by the trial court, and we are of the opinion that the appellee sellers of the rifle and ammunition are not liable to the third party appellants under the facts by reason of the independent negligent acts of

the purchaser of the rifle. Neither are we unmindful of the serious nature of the injuries received by young Hulsebosch, nor the fact that he was injured through no fault of his own. But in an action by the injured third party against the seller of a rifle, when a parent had permitted the sale of the rifle to the sixteen-year old minor as a Christmas gift to his father, no liability for damages can arise on the part of the sellers in the absence of a statute creating such liability.

\*　　\*　　\*　　\*

Under these circumstances we cannot hold that the clearly negligent acts of young Taylor in aiming the rifle at plaintiff and pulling the trigger or some similar act ought to have been foreseen by appellees, or that appellees failed to exercise ordinary care in the sale of the rifle and ammunition.

435 S.W.2d at 163.

Similarly, in *Robinson v. Howard Bros. of Jackson, Inc., supra,* the Mississippi Supreme Court held that a store was not liable for the death of a woman by its sale of a pistol. The court found that the act of murder was an independent intervening act which superseded the negligence of defendants. As the court stated at 1076:

[T]he intentional criminal act of Alexander was an independent intervening cause that broke the causal connection between defendant's negligent act and the death of Mrs. Robinson. The criminal act cannot be said to have been within the realm of reasonable foreseeability because the defendants, although negligent per se, could reasonably assume that Alexander would obey the criminal law.

Then in *Decker v. Gibson Products, supra,* the court held that where an illegal act of a third person intervenes between defendant's negligence and the injury to plaintiff, such a criminal act is treated as the proximate cause which insulates and excludes the negligence of the defendant. The court stated:

The question of whether the defendant could have reasonably foreseen the chain of events which led to plaintiff's mother's death presents no genuine issues as to any material fact, it is therefore proper for summary judgment. Fed. R. Civ. P. 56(c).

505 F. Supp. at 37. Thus, the court granted summary judgment for the defendant gun seller finding that it was not foreseeable that firearm misuse would result from the sale.

The situation presented by this record is unlike the case where misuse of a dangerous instrument was a foreseeable consequence. *See Lake Washington School District v. Schuck's Auto Supply, Inc.,* 26 Wash. App. 618, 613 P.2d 561 (1980) (sale to minors). The record reveals that Miller's conduct in purchasing the rifle would not lead a reasonable seller, exercising ordinary care, to anticipate or foresee that Miller would misuse the rifle. Furthermore, the proximate cause of appellant's injury would not be Thom's alleged negligence, rather, it would be the criminal act perpetrated by Miller which broke any causal connection between Thom's alleged negligence and the injuries sustained by appellant. *Robinson v. State, supra.*

Thus, the trial court did not err in granting summary judgment in favor of appellee Thom Company.

Affirmed.

*Paul E. DiBianco* for plaintiff-appellant.

*Walter Davis* for defendant-appellee, The Thom Company, Ltd., dba King Sporting Goods.

*Leighton Kim Oshima,* Deputy Attorney General, for defendant-appellee, State of Hawaii.